# Washington *v.* The State.

63　189
117　171

### *Indictment for Burglary.*

1. *Indictment; inquiry into evidence before grand jury.*—When it appears that a competent witness was sworn and examined before the grand jury by whom the indictment was preferred, a motion to quash the indictment, or to strike it from the files, on the ground that it was found on insufficient or illegal evidence, can not be entertained.

2. *Verdict and sentence on conviction of burglary.*—Under an indictment for burglary, and a verdict of guilty as charged in the indictment, not fixing the punishment (Code, §§ 4343, 4450), the court may impose a sentence to confinement in the penitentiary at hard labor for two years.

3. *Impeaching witness by proof of former declarations.*—A witness can not be examined as to his former declarations, about a matter that is collateral and irrelevant, for the purpose of laying a predicate to impeach him; and when the matter inquired about is relevant, he can not be required to give a categorical answer, but has the right to explain what he said on the specified occasion.

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The indictment in this case was found in November, 1879, and charged that the defendant, Alexander Washington, "with intent to steal, broke into and entered the dwelling-house of Amanda Arnold." Before pleading to the indictment, the defendant moved the court to quash it, or to strike it from the files, on the ground that there was no legal evidence before the grand jury implicating the defendant in the commission of the offense ; and in support of this motion, he offered to prove by several of the grand jurors, and by Mrs. Amanda Arnold, the prosecutrix, who was the only witness examined before the grand jury, "that her testimony before the grand jury was to the extent that her house had been broken into and entered, and certain goods stolen from it, but she testified to nothing tending to connect the defendant with the commission of said offense, except what had been told to her by other witnesses, for whom subpœnas were issued, but who were not examined as witnesses before said grand jury." The court refused to receive this testimony,

and overruled the said motions, and also overruled similar motions, made after all the evidence was adduced on the trial; to which rulings and decisions exceptions were duly reserved by the defendant.

On the trial, Mrs. Amanda Arnold, a witness for the State, testified that, in July, 1879, her dwelling-house was one day broken into and entered during her absence, and three pieces of cloth were stolen from it; that she "got back one of the pieces of cloth, on the day of the burglary, from Melinda McDonald's boy, who brought it to her to make up, as she was sewing for said Melinda; that she did not know the defendant, but saw him in company with Allen Hampton, on the road about a mile from her house, on the day her house was broken into; that she knew of nothing tending to show that the defendant had anything to do with the offense, except from what had been told to her by other persons; that the defendant had never told her anything about it, and she had never heard him say anything to any one about it, except that, on the trial for this offense before the justice of the peace, he said that he had found the cloth that he sold to said Melinda in the road." Melinda McDonald testified, that she bought the piece of cloth from the defendant on the morning the burglary was committed, and that at the time, in reply to questions by her, he said, "I have been peddling, and have sold out all but this, and I will sell it for less than it cost." Allen Hampton testified, "that he saw defendant early in the morning of the day that he heard Mrs. Arnold's house had been robbed; that he saw him, and stopped and talked with him, on the road between Whistler and Mrs. Arnold's house, about a mile from her house; that while he was talking with him, Mrs. Arnold passed them, going towards her house, with a bundle; that he came on, soon after she passed, to the city of Mobile, and did not see defendant again until about a week afterwards, when he met him on the Eight-mile Creek bridge. On the cross-examination of this witness, the defendant's counsel asked him, for the purpose of laying a predicate to impeach him, 'if he did not, on the very day that he saw defendant at said bridge, tell Mrs. Arnold to have defendant arrested for breaking into her house'; to which question the witness was about to reply, by stating what he had told Mrs. Arnold, when defendant's counsel objected, and said that he wanted the witness to answer the question categorically—yes or no. The witness said: 'I do not know how to answer the question, but I can tell you exactly what I did tell Mrs. Arnold.' " The court refused to compel the witness to answer the question categorically, and the defendant excepted; and as the de-

fendant objected to an answer in any other form, the question was not answered at all.

The jury returned a verdict of "guilty as charged in the indictment." The defendant moved in arrest of judgment, on account of the insufficiency of the verdict, because it did not designate the character of the punishment; but the court overruled the motion, and sentenced him to be confined at hard labor in the penitentiary for the term of two years.

BOYLES, FAITH & CLOUD, for the defendant.—1. By positive constitutional provision (Art. I, §§ 6-8), immunity is secured to the defendant from accusation, arrest, or detention, in all criminal prosecutions, except in cases ascertained by law, "and according to the forms which the same has prescribed"; and by statutory provision equally positive (Code, § 4776), a grand jury is forbidden, in the investigation of an indictable offense, to act upon other than legal documentary evidence, or the testimony of witnesses given before them. An investigation by a grand jury is an essential step in the prosecution of an indictable offense, and great inquisitorial powers are confided to that body; but it is not above the law, and can not disregard the settled principles of law; and whenever it assumes to do so, and the fact is brought clearly to the notice of the court charged with the duty of enforcing its presentments, the court will set aside such illegal action. *Sparrenberger v. The State*, 53 Ala. 481; *Low's case*, 4 Greenl. 439; *People v. Baker*, 10 How. Pr. 567; *People v. Hulbut*, 4 Denio, 133; *U. S. v. Reed*, 2 Blatchford, C. C. 435; *U. S. v. Porter*, 2 Cr. C. C. 60; *U. S. v. Charles*, 2 Cr. C. C. 76; 2 Gall. 364.

2. Hampton should have been required to give a direct answer to the question asked him, the object being to impeach him; and afterwards he might have been allowed to explain.—*Payne v. The State*, 60 Ala. 80; *Haley v. The State*, at the present term.

3. The offense of burglary is punishable by two different characters of punishment—imprisonment in the penitentiary, or hard labor for the county, for not less than one year, nor more than twenty years.—Code, § 4343. It therefore does not fall within section 4450, nor any other section giving the court a discretion; and the power not being given to the court, the punishment must be determined by the jury.—*Turner v. The State*, 41 Ala. 21; *Steele v. The State*, 61 Ala. 213. Nor is the punishment imposed by the court prescribed by law. A sentence to hard labor must be for the county; a sentence to the penitentiary must be simply imprisonment, or confinement by the warden, in such manner as the law

may direct. No law authorizes a sentence to imprisonment in the pententiary and hard labor.

H. C. TOMPKINS, Attorney-General, for the State, cited *Sparrenberger v. The State*, 53 Ala. 481; 2 Brickell's Digest, 548-9, §§ 117, 125; Code, §§ 4450, 4506.

STONE, J.—In refusing to entertain the motion to strike the indictment from the file and quash it, the City Court ruled in precise accordance with what was said by this court in *Sparrenberger's case*, 53 Ala. 481. We there said, "When it appears witnesses were examined by the grand jury, or the jury had before them legal documentary evidence, no inquiry into the sufficiency of the evidence is indulged." In this case, a competent witness was sworn and examined before the grand jury. The precise point urged in argument is, that the grand jury found the bill on insufficient testimony, in this: that while there was proof that a burglary had been committed as charged, no legal evidence was given before that body, showing that the accused was the guilty offender. To allow such inquiry and testimony, would be not only to disregard what was said in *Sparrenberger's case*, copied above, but would greatly retard and embarrass the administration of the law. The City Court rightfully refused to enter upon the inquiry of the *sufficiency* of the evidence before the grand jury.

2. In *Steele v. The State*, 61 Ala. 213, we laid down rules which are decisive of the question raised on the character of the punishment. The City Court followed the rule of construction we there laid down.

3. The question asked of the witness Hampton was collateral, and irrelevant to the issue, and could not be made a predicate for impeaching him.—2 Brick. Dig. 549, § 125. Further than this, if it had been relevant, counsel had no right to limit the witness' answer to a categorical yes or no. The rule requiring that the witness shall be interrogated as to such previous statements, as a preliminary to any offer to prove his prior contradictory statements, as a means of impeaching him, is without aim or meaning, unless it secures to the witness the right and opportunity of explaining what he did say. The law secures to him that right.—2 Brick. Dig. 548, § 117. So, if it were offered as evidence of the witness' unfriendly or hostile feelings towards the accused, it was equally his right to be heard in explanation of what he did say.

The judgment is affirmed.