(117 So. 457)

## LOCKETT v. STATE. (6 Div. 41.)

Supreme Court of Alabama. June 21, 1928.

Oscar Lockett was convicted of murder in the first degree, and he appeals.

Windham & Countryman, of Birmingham, for appellant.

42

Charlie C. McCall, Atty. Gen., and Thos. E. Knight, Jr., Asst. Atty. Gen., for the State.

BOULDIN, J. Oscar Lockett and Clint Mays were jointly indicted for the murder of Ray Payne by shooting him with a pistol.

After severance the defendant Oscar Lockett was tried and convicted of murder in the first degree and sentenced to death.

The evidence for the state tended to show:

The deceased, a police officer of the city of Birmingham, upon request went to the pressing shop of one Loveless on Avenue H and there arrested one Brown. Loveless followed the officer with his prisoner around on Fifteenth street, questioned his authority to make the arrest, leading to a personal encounter between him and the officer. At length Loveless was put under arrest and turned over to another officer arriving on the scene. Officer Payne then obtained a pistol from a bystander, fired into the ground, and ordered the negroes who had gathered to scatter. Saying he was going after another negro, he proceeded along Avenue H past the pressing shop and turned up some concrete steps leading to an alley, where he was killed by a pistol shot. Three lines of evidence were offered by the state touching the killing or participation therein.

Without dispute Lockett and Mays, with others about the pressing shop when Brown was arrested, went with or followed Loveless to where the altercation between him and the officer occurred.

One line of evidence was to the effect that Lockett at that time merely suggested that the combatants be separated, and to that end took hold of Loveless, was kicked loose by the officer, and had no further connection with the matter then or thereafter. This line of witnesses, either as eyewitnesses or witnesses to circumstances, lay the killing to Mays without participation, as for their knowledge, on the part of defendant Lockett.

The second line of witnesses, including Mays, lay the killing to Lockett alone. Mays says when the officer kicked Lockett and ordered him to stand back Lockett said, "What you kick me for? You ought not did that." And later, when Loveless had tripped the officer and was on top of him, some one said, "Jerk them up!" And Lockett said, "Kill him, God damn him!" This line of evidence goes to the effect that Lockett proceeded in advance of the officer, got his pistol from the pressing shop, and was seen to fire on the officer.

The third line of evidence tends to show: Both Lockett and Mays proceeded or ran

ahead of the officer. That one Lee got Lockett's pistol from the pressing shop and handed it to Mays. That Lockett and Mays got together in a position of vantage. Mays handed the pistol to Lockett who fired one shot, and passed it back to Mays, who also fired. This is the version borne out by a confession of the defendant admitted in evidence.

Defendant on the stand denies participation in the killing, claiming to have gone from the scene of the Loveless affair to the home of Grace Williams, and was there when the shots were fired. Grace testifies firing had preceded his coming, and that he took up a shotgun at her house.

This mere outline, not intended to give emphasis to any part of the evidence, nor to pass upon its probative force in any way, will suffice to show that from the arrest of Brown to the killing of the officer was one continuous affair, all admissible as part of the res gestæ. Kennedy v. State, 182 Ala. 10, 62 So. 49; Smith v. State, 88 Ala. 73, 7 So. 52.

The evidence of joint participation in the common criminal enterprise was evidence of conspiracy between Mays and Lockett rendering admissible against Lockett the doings of Mays in furtherance or in perpetration of the crime. The whole matter was for the solution of the jury. If the jury were convinced both were participants, it matters not whose hand held the pistol when the fatal shot was fired.

The res gestæ being thus defined, and the fact of conspiracy being supported by the evidence, it is not essential to determine just when the common purpose to kill the officer was conceived. Matters within the res gestæ were admissible whether occurring before or during the continuance of the conspiracy. If evidence is admitted without required preliminary proof, if followed by such proof or predicate, the error is cured.

These well-understood rules dispose of many of the questions raised upon the trial and here argued as error.

When the state offered Clint Mays as a witness for the state, on inquiry by the court it was shown he had been convicted and sentenced to death for this offense. As for the defendant's objection that he had been convicted, this fact had already been drawn out by defendant on cross-examination of the witness Spencer Millican. No grounds for the objection that he had been sentenced to death were assigned. If we supply the same ground assigned to the proof of conviction, it was limited to want of prior evidence of a conspiracy or of want of evidence corroborative of an accomplice. Neither of these objections was good. There was evidence of conspiracy, but the want of it would in no wise prevent the use of Mays as a witness. There was corroborative evidence by alleged eyewitnesses as well as circumstances, which, if believed, furnished ample corroboration to support a conviction.

Passing over want of proper objection, the conviction and sentence of one jointly indicted, or other disposition of his case, is preliminary to the right of the state to use him as a witness and on proper warning that his evidence may be used against him. Here the court also gave warning that the witness' evidence might be used against him in another trial, and gave the option to decline. We find no error in the court's rulings in this regard. Woodley v. State, 103 Ala. 23, 15 So. 820; South v. State, 86 Ala. 617, 6 So. 52; Henderson v. State, 70 Ala. 23, 45 Am. Rep. 72; Code, § 5636.

The predicate laid for the introduction of the confession before introducing it through the witness Garner was sufficient, was not questioned at the time, nor objection made thereto.

The defendant when examined thereafter gave evidence to the effect that the confession was extorted from him by coercive measures. This went to the probative effect to be given the alleged confession by the jury. Stone v. State, 208 Ala. 50, 93 So. 706. A defendant may before confessions are admitted cross-examine the witnesses for the state as to their voluntary character, and offer outside evidence in contradiction of that produced by the state. Jackson v. State, 83 Ala. 76, 3 So. 847. There was no motion to exclude the confession after the defendant's evidence in contradiction of the predicate laid by the state was introduced.

Charges 9 and 11 given at the request of defendant were highly favorable to defendant. We find no error to reverse in the rulings upon the confessions.

Evidence was offered by defendant that he voluntarily surrendered on the same day of the homicide. There was no effort to show flight, nor that his surrender was due to a sense of guilt. There was no error in refusing evidence that defendant was informed some three quarters of an hour after the homicide that he was being accused and thereupon declared his innocence and purpose to surrender.

That a third party promptly after the shooting came into the pressing shop and announced that Clint Mays had killed the officer was properly disallowed as hearsay. It was not a sudden exclamation from an onlooker admissible as part of the res gestæ, but the narrative of a past transaction.

Charge No. 9 refused to defendant is clearly bad and properly refused in a case where there is evidence that defendant participated with another in the criminal act.

We cannot approve the further argument wherein the solicitor "made reference to a statement as having come from Clint Mays to Oscar Lockett to 'kill the white son-of-a-bitch.'" The record shows no such epithet as coming from either of the accused. The nearest approach is Mays's evidence that Lockett at the time of the difficulty with

Loveless said: "Kill him, God damn him!" or Lockett's confession that Mays said, when handing him the pistol, "Here he comes now; shoot him." In course of the trial witnesses were asked whether they heard the statement used by the solicitor in argument, and uniformly they denied hearing it.

This argument put into the mouth of one of the actors the vilest form of epithet expressive of race hate as a motive for the killing. We have often warned against infractions of this sort. We cannot know how far a feeling of resentment was aroused in the minds of the jury from such statement coming from the official spokesman of the state, and refusal of the court to exclude it. It was wrong, unjust, oppressive, and invasive of the substantial rights of the accused. We are impelled to reverse the cause for this error. Anderson v. State, 209 Ala. 36, 44, 95 So. 171; B. R. L. & P. Co. v. Drennen, 175 Ala. 338, 351, 352, 57 So. 876, Ann. Cas. 1914C, 1037; Tannehill v. State, 159 Ala. 52, 48 So. 662; Wolffe v. Minnis, 74 Ala. 386, 389; Florence Cotton & Iron Co. v. Field, 104 Ala. 472, 16 So. 538.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.

SOMERVILLE, GARDNER, and THOMAS, JJ., dissent.