167 So. 554

## GAST v. STATE.

### 6 Div. 794.

Supreme Court of Alabama.

March 12, 1936.

Rehearing Denied April 30, 1936.

L. C. Bell, of Tuscaloosa, for appellant.

309

A. A. Carmichael, Atty. Gen., Jas. L. Screws, Asst. Atty. Gen., and Gordon Davis, Solicitor, of Tuscaloosa, for the State.

THOMAS, Justice.

The defendant was indicted and convicted of murder in the first degree, and the jury fixed the penalty at "death in the electric chair."

■ This was a sufficient verdict on which judgment was rendered. Hull v. State, ante, p. 281, 167 So. 553.

■ The undisputed evidence shows that defendant killed his wife, reported his offense to neighbors, and immediately surrendered to the sheriff of his county. His defense was insanity, introducing one expert and several lay witnesses to show his unbalanced mental status, or that he was insane at the time the offense was committed and at the time of his trial. Defendant took the stand as a witness in his own behalf. The rebuttal evidence by the state consisted of several lay witnesses and two expert witnesses, who testified that in their opinion the defendant was sane. Thus a jury question was presented. McMillan v. Aiken et al., 205 Ala. 35, 40, 88 So. 135.

■ A motion for continuance for lack of time in which to prepare a defense was addressed to the sound discretion of the trial court, and denied. In denying the motion, the court exercised a sound discretion in the premises. Peterson v. State (Ala.Sup.) 166 So. 20[1]; Burns v. State, 226 Ala. 117, 145 So. 436; Hudson v. State, 217 Ala. 479, 116 So. 800.

The indictment was returned on April 11, 1935. By agreement of counsel the trial was set for April 25, 1935. The arraignment was of date of April 18, 1935,

[1] 231 Ala. 625.

when pleas of "not guilty" and "not guilty by reason of insanity" were interposed.

The bill of exceptions recites, among other things, the following ground for continuance made on the date set for the trial: "That a motion was made before the Court for the appointment of specialists, or physicians to examine the defendant for the purpose of determining his sanity. That this motion was granted, but the examination has not been made and the Defendant thereby deprived of expert testimony to determine his mental condition," and on April 25, 1935, a formal order was entered for "Dr. J. S. Tarwater, Dr. S. T. Hardin and Dr. G. B. Conwill, who are reputable specialist practitioners in mental and nervous diseases, to examine the defendant, Joseph Wheeler Gast, and report to the Court whether there is reasonable ground to believe that defendant was insane at the time of the commission of the offense with which he is charged, or presently, and make written report to the Court," concluding: "This was merely for the information of the Court to guide it in determining its course in this matter."

It is then recited, that "We, Doctors G. B. Conwill, J. S. Tarwater, and S. T. Hardin, appointed by the Court to examine Joseph Wheeler Gast, after making a complete examination to the best of our knowledge, find that there is reasonable ground to believe that defendant was not insane at the time of the commission of the offense with which he is charged or that he is presently insane; on the contrary we find that he was sane at the time of the commission of the crime and sane at this time." This report being made and filed, the court announced that he would proceed with the trial.

Defendant's counsel having examined the report, objected thereto on the ground "That the examination made by the physicians and their observation (were) so short that it would be difficult to determine in that short length of time, and on that short notice, whether or not there is reasonable ground for believing that the defendant was insane at the time that he committed the homicide"; the court stating in reply, "That matter is merely for the information of the Court. If the Court had information that this man was insane at the time of the offense, then it would proceed and have him committed for observation, but having no such information, I cannot do it. I will overrule the motion for a continuance."

■ The action above recited took place on the date of the trial. If objection by defendant was to be made, it should have been addressed to the discretion of the court when the selection and appointment of that commission was made, and not on the date of the trial. The statute was not mandatory, but merely discretionary. Oliver v. State (Ala.Sup.) 166 So. 615; Rohn v. State, 186 Ala. 5, 65 So. 42; Granberry v. State, 184 Ala. 5, 63 So. 975; Cody v. State, 24 Ala.App. 499, 137 So. 318. Under the circumstances of the case, the trial court sought to comply with the discretionary provisions of the act of 1933, Gen.Acts 1933, pp. 144, 145.

■ The defendant's motion for a continuance on the ground of an absent witness was properly overruled. No compulsory process was prayed, and the court was not informed of the nature and materiality of the evidence sought of that witness. Hull v. State, supra; Hudson v. State, supra.

■ The expert witnesses expressing their opinion of defendant's mental status were properly qualified as experts. The lay witnesses were properly qualified as to their immediate association and familiarity with the defendant to render their opinion as to his sanity. The sufficiency of a witness' efficiency in the knowledge of the subject and material facts to qualify him to testify is largely within the sound discretion of the trial court. Watson et al. v. Hardaway-Covington Cotton Co., 223 Ala. 443, 137 So. 33; Louisville & Nashville R. Co. v. Lovell, 196 Ala. 94, 71 So. 995; Pope v. Ryals (Ala.Sup.) 167 So. 721;[2] Williams v. State, 224 Ala. 6, 138 So. 291; Bass v. State, 219 Ala. 282, 122 So. 45; Kilpatrick v. State, 213 Ala. 358, 104 So. 656; Jones v. State, 181 Ala. 63, 61 So. 434. And no abuse of discretion was shown to have been committed by the trial court in allowing the witnesses—expert and lay—to testify.

The bill of exceptions recites that defendant was a witness in his own behalf; testified of his residence at Ralph and other places, of his fifteen years of married life to the deceased and their six children; that he moved to a "CCC Camp" (Civilian Conservation Corps) and remained there

[2] Ante, p. 260.

until August, 1934; and that he and his wife had "ups and downs" in their associations as husband and wife. The witness was asked by his counsel and answered as follows:

"Ques. Did you ever accuse her of any improper relations with other men before that time? Ans. No.

"Ques. Now Mr. Gast, commencing from that time, after you came home from the CCC Camp, and tell your story to the jury?

"Objection by Mr. Wright, Mr. Wright stating, 'We do not know what his story is.'

"No ruling by the Court.

"Ques. Tell what you found when you got home and what happened. Ans. It ain't fair; I won't talk about it; I ain't going to talk about it, she cannot strike back at me; I will take the fate that the jury gives me; I will go to the electric chair like a man; I will die before I will say a harm word against my wife. I don't want you to think I am crazy; it is not fair to her to say a harm word against her."

The witness was then cross-examined by the state as follows:

"Q. Mr. Gast, how many times did you shoot your wife?

"Objection to this question by Mr. Bell, on the ground, first, that the testimony called for does not relate to or contradict any testimony given by the defendant on direct examination, and is therefore improper, incompetent and irrelevant, and on the further ground that the defendant has refused to discuss the facts in this case, which he has the constitutional right to do. The Court overruled the objection and defendant duly excepted.

"A. How many times did I shoot her?

"Q. I will ask you if she did not have her right hand up there to protect herself as you shot her?

"Objection by Mr. Bell on the same ground, was overruled by the Court and the defendant duly excepted.

"A. I don't know. I could not say; I really don't."

It is insisted by appellant's counsel that since defendant had made no statement about which there was a conflict in the evidence, he was free from cross-examination by the state's counsel. It is declared, that when a defendant becomes a witness he subjects himself to cross-examination, and may be asked questions as to material facts shedding light upon the issues of guilt and liability for the crime within the pleadings.

In Carpenter v. State, 193 Ala. 51, 69 So. 531, 532, the holding was that in a criminal case, defendant voluntarily taking advantage of the right to testify in his own behalf, thereby waives his constitutional protection against answering questions touching the merits of the case which might tend to incriminate him; and such witness may be recalled and further examined. It was further observed that "A defendant, who testifies for himself as a witness, may be impeached in the same manner as other witnesses, by showing that he has been convicted of crime involving moral turpitude, or that he has made contradictory statements, or that he is a person of bad character. Thompson v. State, 100 Ala. 70, 14 So. 878." Orr v. State, 225 Ala. 642, 144 So. 867; Mobile & O. R. Co. v. Watson, 221 Ala. 585, 130 So. 199; Bigham v. State, 203 Ala. 162, 82 So. 192.

A defendant making himself a witness may be impeached by evidence of general bad moral character or reputation, such as applies to any other witness. State v. Scott, 332 Mo. 255, 58 S.W.(2d) 275, 90 A.L.R. 870, and authorities; Ward v. State, 28 Ala. 53; Clarke v. State, 78 Ala. 474, 56 Am.Rep. 45; Dolan v. State, 81 Ala. 11, 1 So. 707; Davenport v. State, 85 Ala. 336, 5 So. 152; Mitchell v. State, 94 Ala. 68, 10 So. 518; Johnson v. State, 203 Ala. 30, 32, 81 So. 820; Stone v. State, 208 Ala. 50, 93 So. 706; Baugh v. State, 215 Ala. 619, 112 So. 157; Carpenter v. State, 193 Ala. 51, 69 So. 531; Charley v. State, 204 Ala. 687, 87 So. 177; Smith v. State, 197 Ala. 193, 199, 72 So. 316. The rule is correctly stated in Carter v. State, 226 Ala. 96, 145 So. 814. The action of the trial court in this behalf was free from reversible error.

The insistence of appellant's counsel, that since the defendant did not testify as to the details of the uxoricide, he was not required to submit himself to cross-examination or subject to impeachment, is untenable. 90 A.L.R. 871, note; Carpenter v. State, supra. It may be observed, that under his plea of insanity his demeanor as a witness was for the jury, and the state had the right to impeach his

evidence—demeanor and testimony—by introducing evidence as to his general bad character, and by his cross-examination as a witness.

The several matters urged as error and which we have discussed, were presented to the trial court by way of a motion for a new trial and affidavits offered to support the motion. We have searched the record and bill of exceptions and find no reversible error; the verdict was not contrary to the preponderance of the evidence. Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738. It may be observed that on the motion for a new trial, evidence that was merely cumulative or impeaching was offered by way of affidavits as newly discovered evidence without fault or neglect on the part of defendant or his counsel. We do not believe it sufficient to change the result of this trial. Scruggs v. State, 224 Ala. 328, 140 So. 405; Cosby v. State, 202 Ala. 419, 80 So. 803; Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45; Fulwider v. Jacob, 221 Ala. 124, 127 So. 818.

The date fixed for the execution of the sentence of the law having passed, it is ordered and adjudged that Friday, the 15th day of May, 1936, be and the same is fixed as the date upon which the sentence will be executed as provided by law.

Affirmed.

All the Justices concur.

