RAY *v.* STATE.

Mar. 17, 1952.

No. 38335 (57 So. (2d) 469)

Tom **D. Bourdeaux** and **Roger B. Shows**, for appellant.

**Joe T. Patterson**, Assistant Attorney General, for appellee.

652

**Arrington, J.**

The appellant, James Ray, Jr., was jointly indicted with Roosevelt Young, Ernest Woodson and Bryant Moody, Jr., for the murder of C. W. McDonald. The appellant was granted a severance, tried, convicted, and sentenced to death, from which judgment he appeals.

McDonald operated a small grocery store in the City of Meridian. He was unmarried, was about 70 years of age, and lived in quarters in his store. On the morning of April 9, 1950, he was found brutally murdered in his grocery store. Upon an investigation made by the officers, Ernest Woodson and Roosevelt Young were arrested, and later, the appellant, James Ray, Jr., and Bryant Moody, Jr., were arrested. Upon arraignment, Bryant Moody, Jr., who was represented by counsel, entered a plea of guilty to murder and was sentenced to life imprisonment in the penitentiary. On the trial of appellant, he testified as a state's witness, implicating the appellant as a participant in the crime. One McCarty testified on the part of the State that he saw the appellant coming out of the store of the deceased at or about the time the alleged crime occurred with something similar to a crowbar. Tony Miller, a 13 year old boy, testified that he saw Ray going into the store with a crowbar. This witness further identified all four of the defendants as being present at the store. The evidence on the part of the state further showed that the murder was planned for the purpose of robbery and according to the testimony of Bryant Moody, Jr., after the robbery, the money obtained was divided into four parts and that Roosevelt Young, one of the codefendants, gave him $50. The appellant, James Ray, confessed his guilt to the officers. His con-

fession is fully corroborated by the testimony of the witnesses and the physical facts.

On this appeal, four assignments of error are argued: (1) That the court erred in admitting in evidence a tape recording of the alleged confession made by the accused; (2) the confession was not freely and voluntarily made; (3) the court erred in admitting the testimony of the witness, Tony Miller, because of his youth and that he was not competent to testify, and (4) that the court erred in overruling a motion of the defendant for a subpoena duces tecum. As to the admissibility of the confession, when the confession was offered in evidence, the court conducted a preliminary inquiry as to its admissibility in the absence of the jury. Seven officers testified that the appellant was fully advised of his rights and that his statement was freely and voluntarily made without resort to coercion, force, physical violence, threats, or promise of immunity or reward. The proof further shows that the questioning was held on the ground floor of the city hall in Meridian, that the windows and doors were open and that a large number of people were in and out. The defendant testified on the hearing that his statement made to the officers was not free and voluntary, that he was forced to make his statement as a result of physical violence administered to him by the officers, Nichols, Birdsong, and Wyche; that they beat him and resorted to other brutal treatment in order to make him confess. All of the brutal treatment was denied by the officers. The court held that the confession was admissible. This court has consistently held that ▉▉ where the evidence on the admissibility of a confession is conflicting, this court will not disturb the trial court's finding unless it appears to be clearly contrary to the evidence. Street v. State, 200 Miss. 226, 26 So. (2d) 678, and authorities cited therein. The appellant contends that the confession was inadmissible under the holding of the court in the case of Haley v. Ohio, 332 U. S. 596, 68 S. Ct. 302, 92 L. Ed. 224. The facts in the instant case are quite dif-

ferent from those in the Haley case, which case was fully discussed in Moore v. State, 207 Miss. 140, 41 So. (2d) 368. In this case, which involved a confession, the court held that the decision of the trial judge that the confession was free and voluntary would be upheld unless manifestly wrong.

After the appellant admitted his guilt and participation in the McDonald murder, ██ a tape recording was made of the accused's confession. The court heard the recording in the absence of the jury. Mike Nichols, Director of the Identification Bureau of the Mississippi Highway Patrol, testified that the machine recorded every sound that was made and that the tape recording reproduced the confession exactly as it was given and that nothing had been added to it or taken from it; that the tape recording had been under lock and key in his possession since it was made and that it was not tampered with or changed in any respect; and that the questions and answers reproduced on the recording were exactly as the questions were propounded to appellant and the answers given by him thereto. The trial court held that the tape recording was admissible and it was played before the jury.

The appellant argues that the admission of the tape recording of an alleged confession, because of its very nature, violates the defendant's rights and is reversible error, and for the further reason that a tape recording is subject to partial deletion, splicing, and rearranging, whereby a person might distort, modify, alter and destroy its original form. This is the first time that the question of a recording has been presented to this court. We have been unable to find where any other court has passed upon the admissibility of a tape recording. The Attorney General, however, cites the case of Williams v. State, Okl. Cr., 226 P. (2d) 989, 994. In this case a wire recording of a confession was held to be admissible in evidence. The court stated that this was the first time that the identical question had ever been presented to that court and cited

168 A. L. R. 927, Annotation, where cases pertaining to sound recordings as evidence were discussed, and held that the reasoning of the courts in some of those cases would likewise apply to the wire recording there involved. A wire recording is very similar to a tape recording, and we are of the opinion that the holding of the Oklahoma court is applicable to the instant case.

"According to the evidence before us, the wire recording was taken upon a thin wire by mechanical or electrical means. The original recording on a spool was filed with the record on appeal and we have inspected it. Such wire purports to record the sounds of the human voice which are picked up by a microphone and transferred to the wire. The wire is fragile. It can be easily broken and tied together. It can be stopped and played back at will. The wire can be erased and used again. It is the contention of counsel for defendant that the recording wire is so fragile, breakable and perishable that the court should not have admitted it in evidence.

"It is true that most of the cases involving sound recordings as evidence involve various types of discs used to reproduce the sound of the human voice. State v. Perkins, 355 Mo. 851, 198 S. W. (2d) 704, 708, 168 A. L. R. 920. In that case the Supreme Court of Missouri held that phonographic recording of a confession made by the defendant held on suspicion for rape was admissible in evidence against him when a proper foundation is laid by the person with respect to the use of this method of reproducing the voice of the accused. In the body of the opinion the court stated:

" 'The principle involved is the same as that in relation to the admissibility of talking motion pictures. In Peoples v. Hayes, 21 Cal. App. (2d) 320, 71 P. (2d) 321, 322, a sound motion picture of the defendant making a confession to the police was reproduced to the jury over the objection that the reception of such evidence was prejudicially erroneous to the defendant, and this was the single point in the case. In upholding the conviction,

the court said that such reproduction "Stands on the same basis as the presentation in court of a confession through any orthodox mechanical medium, that is, there is a preliminary question to be determined by the trial judge as to whether or not the sound moving picture is an accurate reproduction of that which it is alleged occurred. If after a preliminary examination, the trial judge is satisfied that the sound moving picture reproduces accurately that which has been said and done, and the other requirements relative to the admissibility of a confession are present, i. e., it was freely and voluntarily made without hope of immunity or promise of reward, then, not only should the preliminary foundation and the sound moving picture go to the jury, but, in keeping with the policy of the courts to avail themselves of each and every aid of science for the purpose of ascertaining the truth, such practice is to be commended as of inestimable value to triers of fact in reaching accurate conclusions. * * *'',

"In the Pennsylvania case of Commonwealth v. Clark, 123 Pa. 'Super. 277, 187 A. 237, 240, it was stated: 'The phonograph, the dictaphone, the talking motion picture machine, and similar recording devices, with reproducing apparatus, are now in such common use that the verity of their recording and reproducing sounds, including those made by the human voice in conversation, is well established; and as advances in such matters of scientific research and discovery are made and generally adopted, the courts will be permitted to make use of them by way of presenting evidentiary facts to the jury.'

"It is our conclusion after fully considering this question that the rules determining the admissibility of a confession taken on a phonographic record or on a wire such as in the instant case or a disc are to be determined by the same rules as govern the taking of a confession by shorthand, which is later transcribed. That is, the party offering the wire recording in evidence must make a showing with reference to its preparation, that is,

whether the mechanical device was sufficiently capable of taking the confession; and also there should be a proper showing as to the manner of the preservation of the wire recording, that is, as to whether any changes have been made, deletions, or additions to the recording, and of the correctness. The genuineness or the authenticity of the recording must be established. The contention of counsel that the recording should have been rejected because the evidence disclosed that the wire may be erased or otherwise changed likewise applies to a confession which is taken by a court reporter in shorthand and later transcribed. The rules as to the authenticity or genuineness of the confession are the same. If the party objecting to the confession can make a showing that it has been erased or deleted or changed in any manner the court would sustain an objection to its admissibility. The wire recorder which reproduces the actual voice of the accused and those who may be questioning him should be of much more value to the court and the jury than a confession taken in shorthand and later reduced to writing, especially where an issue has been raised as to whether the confession was voluntarily made.''

There was ample evidence to sustain the finding of the trial court that the confession was freely and voluntarily made and its admissibility was not error.

The preliminary proof as to the tape recording hereinabove set out met all requirements as to being an accurate reproduction of appellant's confession, and the confession having been shown to be free and voluntary, was admissible in evidence.

 The next assignment argued is that the court erred in allowing the witness Tommy Miller to testify, as he was incompetent because of his age and lack of understanding of the solemnity of the oath. This witness was 13 years of age and had finished the fourth grade in school, and testified that he knew that the meaning of an oath was to tell the truth. In Peters v. State, 106 Miss. 333, 63 So. 666, with reference to the

competency of a six-year old child, the court held: "All that is required to qualify a child as a witness is that it should have sufficient capacity to observe events and to recollect and communicate them. In determining its capacity for communication, 'there are two elements to be taken into consideration: (a) There must be a capacity to understand questions put and to frame and express intelligent answers. (b) There must be a sense of moral responsibility, a consciousness of the duty to speak the truth.' 1 Wigmore on Evidence, § 506." See also Jackson v. State, 158 Miss. 524, 130 So 729; Yarbrough v. State, 202 Miss. 820, 32 So. (2d) 436. A reading of this witness's testimony shows that he understood the questions propounded to him, that he made intelligent answers thereto, and that he was a competent witness.

The final assignment of error argued is that the court erred in overruling defendant's motion for a subpoena duces tecum. The motion was made in open court and is in part as follows: "Comes now the defendant, James Ray Jr., and moves the Court to direct a subpoena duces tecum to the District Attorney, Jack Lobrano, to the County Attorney, Will Clayton, to the Chief of Police of the City of Meridian, O. A. Booker, to Mike Nichols of the Mississippi State Highway Patrol, and to any other law enforcement officers of the City of Meridian or the County of Lauderdale, or the State of Mississippi, who might have in their possession a written statement made by James Ray, the defendant, * * *."

It will be noted that the requested subpoena duces tecum is not directed to anyone in particular but to several enumerated parties and then "to any other law enforcement officer of the City of Meridian, County of Lauderdale, or the State of Mississippi who might have in their possession a written statement made by James Ray * * *." It is not even alleged in the motion, or claimed in the motion, that any one of the particular persons named had possession of a written statement made by James Ray. The motion, therefore, is so general and

indefinite that the court committed no error in overruling it. In Keeton v. State, 175 Miss. 631, 167 So. 68, 71, the court said: "It is assigned and argued that the court erred in overruling appellant's application for a subpoena duces tecum directed to the district attorney and county attorney and one Jourdan, requiring them to produce certain written confessions alleged to have been made by appellant for inspection by appellant's counsel. There is no merit in this contention. The application for the subpoena should have set out the substance of what was expected to be proven by the confessions. This was not done. Eaton v. State, 163 Miss. 130, 140 So. 729; Stevens v. Locke, 156 Miss. 182, 125 So. 529."

The appellant's defense was an alibi. He was ably represented in the court below. The evidence on the part of the State was overwhelming as to his guilt and independent of his confession and the tape recording, the evidence was abundant to support his conviction. He received a fair and impartial trial and the judgment of the lower court is affirmed.

Affirmed and Friday, May 2, 1952, set for the date of execution.

All Justices concur.