81 So.2d 303

**William Earl FIKES**

v.

**STATE of Alabama.**

2 Div. 335.

Supreme Court of Alabama.

May 12, 1955.

Rehearing Denied June 23, 1955.

Peter A. Hall and Orzell Billingsley, Jr., Birmingham, for appellant.

Si Garrett, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

## PER CURIAM.

Defendant was convicted of first degree burglary with intent to ravish Jean Heinz Rockwell· in an apartment dwelling which she occupied, and was sentenced to death,— Section 85, Title 14, Code of 1940.

The evidence was that on Friday night about "10:20" of April 24, 1953, Mrs. Rockwell was asleep in her bedroom. She had two babies, one of whom was in an adjoining bedroom and the younger in her room. Her husband was not at home. When she awakened around "10:15" a Negro man was sitting on her as she lay in bed. She knew he was a Negro but did not see his face as it was covered. She could not identify defendant as that person. He had a knife belonging to her which he had gotten from the kitchen. He told her he was going to kill her. She began struggling to get off the bed and with him holding on to her she managed to get into the hall (where there was a light) adjoining her room. She went all the way down the hall and into the living room in the front of her apartment. There he fell over a stool and fell on Mrs. Rockwell. She was screaming and he threatening to kill her with the knife at her throat, and he told her "to straighten out". She grabbed the knife and got it out of his hand. He jumped up and ran down the hall and out through the kitchen and back door. She fell up against the back door and locked it. It was locked when she went to bed but was open when he ran out of it. The kitchen was in the middle of the apartment between the dining room and bedrooms. There was an outside entrance to the kitchen with a screen and wooden door. The screen to the window was also open and the window up. There were holes in the screen over by the latches, but these holes were not there before he entered the apartment.

The indictment properly set out the charge, and the record shows that the requirements of law were complied with in respect to it. · It was signed by the solicitor· and endorsed by the foreman of the grand jury, with the caption required by law, and filed in open court in Dallas County on November 12, 1953. Defendant was arraigned, pleaded not guilty and not guilty by reason of insanity, and was represented on arraignment and throughout the trial by attorneys. The court set the date of trial for December 7, 1953, and drew a special venire as required by law. No question is raised in respect to such matters.

On November 19, 1953 defendant filed a motion in writing to quash the indictment, alleging in substance that he is a member of the Negro race, a citizen of Alabama and of the United States; that Negroes are and were systematically excluded from grand juries organized in Dallas County solely because of their race or color; and are discriminated against in the organization of grand juries in said county solely because of their race or color in that no members of said race, or a mere token number, are included on the jury roll or have their names placed in the jury box, or if their names are so placed they are not drawn for service on any grand jury, or if they are drawn they are not listed, thereby denying to defendant due process and equal protection of the laws guaranteed to him by the Constitution and laws of Alabama and the Fourteenth Amendment of the United States Constitution.

That no Negro served on the grand jury which returned the aforesaid indictment against defendant in this cause; nor has any Negro served on a Dallas County grand jury in modern times. That there exists a system, practice or custom in drawing or organizing grand juries to serve in Dallas County designed to totally exclude Negroes from service on such grand juries, or to discriminate against them solely on account of their race or color contrary to the Constitution and laws of Alabama and the Fourteenth Amendment to the Constitution of the United States.

That when the indictment was returned the census of the United States showed that the male population of Dallas County over the age of twenty-one numbered 13,996, of

which 6,040 were whites, and that the Negroes over twenty-one years numbered 7,-956. That a great majority of said Negro males are native born citizens of Dallas County, householders and freeholders, generally reputed to be honest and intelligent men, esteemed in the community for their integrity and good character and are not habitual drunkards nor afflicted with disease or physical weakness such as would disqualify them to discharge the duties of grand jurors, and otherwise possess all of the qualifications and none of the disqualifications set out in the Constitution and laws of Alabama and of the United States which govern the situation and service of grand jurors: yet the jury commission failed or refused to place on the jury roll and in the jury box the names of such Negro male citizens of Dallas County, and at that time the jury roll of said county contained less than two percent of the names of the total number of Negro male citizens eligible under the Constitution and laws of Alabama and of the United States for jury duty in said county. Those details are further elaborated. The facts thus alleged were verified by the affidavit of defendant.

On the same day another motion in writing was filed by defendant to quash the indictment, alleging that it was based solely upon an alleged confession of guilt which was extorted and illegally obtained from defendant by and through force and violence or threats of force and violence, coercion, torture and brutality by officers and detectives of the City of Selma and of Dallas County, Alabama, while acting in their official capacity and he was deprived of due process and equal protection of the law guaranteed by the Constitution and laws of Alabama and the Fourteenth Amendment to the Constitution of the United States. That prior to the return of the indictment defendant was arrested without warrant on May 16, 1953, was never taken before a magistrate but was held in the city jail of Dallas County for several days without a formal charge and without being permitted to confer with counsel, his parents or friends, and was subsequently taken to Kilby prison in Montgomery where he has remained until the present time, and where he was not allowed to confer with counsel, his parents or friends until he had been indicted in this cause and after he had been subjected to days of uninterrupted questioning by officers of the City of Selma and of Dallas County, and subjected to violence or threats of violence, coercion and force or threats of force, and an alleged confession was extorted from him, which is the sole basis of said indictment, and he was thereby deprived of his rights to due process and equal protection guaranteed by the Constitution and laws of Alabama and the Fourteenth Amendment to the Constitution of United States. Defendant also moved to quash the venire or array drawn to try him and assigned the same grounds in substance as those assigned in the first named motion to quash the indictment as amended supra.

It appeared from the evidence submitted on the motion that on June 2, 1953 this defendant had been indicted in several cases of a similar nature, including the one now on trial. That motion to quash them had been made and acted on October 9, 1953, resulting in their being quashed on substantially the grounds set up in the first motion herein set forth. The evidence on the instant motion showed that there was a jury roll dated "1942 to 1951" and another from "1951 to 1953". The grand jury which returned the indictment of June 1953 was drawn from the box based on the roll of "1951 to 1953"; although there were some cards in the box of persons whose names were not on the roll. The jury commissioners had not always been careful to put all the names on the jury roll; and had put some cards of names in the box not on the roll. On that particular jury roll there were shown to be eight Negroes. Those indictments were quashed on October 9, 1953. The jury commission went about revising the roll and refilling the box on about the first of October (may be the 5th). They made investigation from available sources, such as the city and telephone directories, the list of registered voters, and by personal inquiry and personal contact. They communicated with Negro leaders and others and used their own personal knowledge as to the fitness of persons subject to jury service—males over twenty-

one years and not over sixty-five years. They were confronted with the statute, section 3, Title 30, as amended, Pocket Part Code, which is as follows:

"The following persons are exempt from jury duty, unless by their own consent: judges of the several courts; attorneys at law during the time they practice their profession; officers of the United States; officers of the executive department of the state government; sheriffs and their deputies; clerks of the courts and county commissioners; regularly licensed and practicing physicians; dentists; pharmacists; optometrists; teachers while actually engaged in teaching; actuaries while actually engaged in their profession; officers and regularly licensed engineers of any boat plying the waters of this state; passenger bus driver-operators, and driver-operators of motor-vehicles hauling freight for hire under the supervision of the Alabama public service commission; railroad engineers, locomotive firemen, conductors, train dispatchers, bus dispatchers, railroad station agents, and telegraph operators when actually in sole charge of an office; newspaper reporters while engaged in the discharge of their duties as such; regularly licensed embalmers while actually engaged in their profession; radio broadcasting engineers and announcers when engaged in the regular performance of their duties; the superintendents, physicians, and all regular employees of the Bryce hospital in Tuscaloosa county and the Searcy hospital in Mobile county; officers and enlisted men of the national guard and naval militia of Alabama, during their terms of service; and convict and prison guards while engaged in the discharge of their duties as such."

The jury commission adopted a policy, not always observed, not to include those who are exempted by statute. When a person was known to be exempt, he was usually left off the list. They spent some twelve or more days working on this new revised roll, and completed it October 17, 1953. It is their duty under section 20, Title 30, as amended July 7, 1945, Pocket Part Code to meet annually between the first of August and the twentieth of December, and to make in a well bound book a roll containing the name of *every male citizen living in the county who possesses the qualifications prescribed by statute and who is not exempt by law from jury service.* The commission is required to have written on plain white cards the name, occupation, place of residence and place of business of each person whose name is placed on the jury roll. Those cards are required to be placed in a metal box provided with a lock and two keys and kept in a safe or vault in the probate office. One of the keys is kept by the president of the jury commission and one by a judge of the county.

Section 21, Title 30, as amended July 1, 1943, Pocket Part Code, prescribes the qualifications of persons to be placed on the jury roll, as follows:

"The jury commission shall place on the jury roll and in the jury box the names of all male citizens of the county who are generally reputed to be honest and intelligent men and are esteemed in the community for their integrity, good character and sound judgment; but no person must be selected who is under twenty-one or who is an habitual drunkard, or who, being afflicted with a permanent disease or physical weakness is unfit to discharge the duties of a juror; or cannot read English or who has ever been convicted of any offense involving moral turpitude. If a person cannot read English and has all the other qualifications prescribed herein and is a freeholder or householder his name may be placed on the jury roll and in the jury box. No person over the age of sixty-five years shall be required to serve on a jury or to remain on the panel of jurors unless he is willing to do so."

Section 29, Title 30 authorizes the court to tax against the clerk of the commission

or its members the cost of summoning for jury service any person on the roll who does not possess the qualifications required by law.

Section 30, Title 30, provides the manner of drawing a venire for service. That is, that the judge is required to draw from the box without selection the cards with names sufficient for the purpose. He shall draw not less than fifty for service to supply a grand jury and petit juries for the week. They are summoned to court by the clerk. By section 38, Title 30, the judge in open court hears and acts on excuses. The cards with the names of those left are placed in a hat or box and the judge then draws out of the hat or box eighteen cards for those to serve on the grand jury. From those remaining he draws cards for the different panels for petit jury service.

By section 63, Title 30, in all cases charging a capital felony the venire must consist not only of those drawn for regular petit jury service for the week but an additional number fixed by the judge so that the venire will consist of not less than fifty nor more than one hundred persons. A list of them is furnished defendant at least one entire day before the day set for trial. On the day set for trial, under section 64, Title 30, the court must inquire into and pass on the qualifications of all persons who appear in court in response to summons for service. By section 52, Title 30, before the veniremen are accepted defendant may examine them as to their qualifications, interest and bias. And by section 55, Title 30, either party may challenge any such person for one of the causes there provided. By section 65, Title 30, the number of veniremen left, from which the trial jury is taken in a capital case, cannot be less than thirty. If less, it is recruited from the jury box. When the venire is finally purged and a sufficient number left, a list is made of them. From that list the State strikes one and defendant two until only twelve are left to serve as the trial jury. They are then sworn as such. So that every precaution is prescribed by law

to obtain a grand jury of intelligent and competent men, and a petit jury to include also those free from bias, interest or formed opinion.

■ We think it would be difficult to formulate a more perfect method for obtaining jurymen to serve on grand and petit juries. The first step is to get only qualified men on the jury roll. That is those having the qualifications specified by law and not exempt. The names of all such men in the county should be placed on the roll and in the box every year. That is a very difficult and delicate job for the commissioners. They are appointed by the governor (except in some specified localities). There is no legal reason for quashing an indictment or venire simply because the jury commission did not put the name of every qualified person on the roll or in the jury box, in the absence of fraud (or a denial of constitutional rights). Section 46, Title 30, Code; Bell v. Terry, 213 Ala. 160, 104 So. 336; Wimbush v. State, 237 Ala. 153(11), 186 So. 145. The commissioners have a very delicate task to perform which involves sound judgment and practical discretion. Generally it is not revisable by the courts. But they must act in good faith and not omit a segment of people who are qualified to serve without a fair representation. And that applies to racial differences. There are shown to be racial distinctions in Dallas County between the white and Negro population. There are more Negroes than whites living in the county. The figures set out in the motion in that respect are shown to be substantially correct. The commission put into the box and on the roll in October 1953 fifteen hundred names of which two hundred and fifty to three hundred were Negroes, and from which the venire was drawn which furnished the grand jury and petit juries here involved. There was nothing on the roll or cards which indicated their race. There had been only a small number of Negroes on previous jury rolls. Probably they had been systematically left off such rolls on account of race. Very few Negroes were ever drawn on a venire. When one did appear he was

either excused at his request or stricken by a party to the cause in selecting the trial jury. This was recognized by the court in quashing the indictments returned June 2, 1953. It appears that most of the criminal cases in the county have been against Negroes—said to be ninety percent of them; and invariably Negro jurymen were stricken by defendants on trial for that reason alone. This they had a right to do. Negroes never sat on a grand jury nor tried a case on a petit jury. There were seven persons known to be Negroes on the venire from which the grand jury was drawn which returned the instant indictment, and twelve on the venire from which the petit juries were organized for December 7th for the trial of defendant in this case. The majority of the Negroes are shown to be tenant farmers. Some own their land. Some of them who are otherwise qualified are professional men, such as dentists, doctors, school teachers, embalmers and druggists, all of whom are exempt. The most intelligent and competent as a rule are exempt. The evidence shows that a large majority of the Negroes are ignorant, with little or no education and low moral character, and there is much venereal disease among them and a large percentage of illegitimacy.

The evidence does not show that some Negroes as well as whites who were competent to serve and not exempt were not put on the roll. It may be Negroes were systematically omitted prior to the roll made in October 1953, but that was not true in making up that particular roll.

■ The indictment and trial here involved are controlled by the roll then made. The prior habit of the commissioners in respect to Negroes on jury rolls can only serve to shed light on their conduct in making up the last jury roll. But that is not sufficient to overcome the direct positive evidence showing an effort in good faith to have the Negro race fairly represented on the jury roll by Negroes who are qualified and not exempt after indictments have been quashed for such previous failure. It is not appropriate to say that they are entitled to be represented in the same proportion as the whites are represented unless their qualifications are in the same proportion. That does not appear. The comparison without that is not an accurate guide for a determination of the question. We think the trial court properly overruled the motion to quash the indictment and the motion to quash the venire for use on the trial of this cause because, we think, the evidence fails to show that the jury commission systematically omitted qualified and not exempt Negroes from the jury roll because they were Negroes or discriminated against them on that account, and thereby deprived defendant of due process or the equal protection of the law. We think, therefore, there was no reversible error in that respect.

As indicated above, the defendant also moved to quash the indictment on the ground, in substance, that the only evidence before the grand jury in respect to the charge made by the instant indictment was that of an alleged confession which was obtained from defendant by and through force and violence or threats of force and violence, coercion, torture and brutality by officers and detectives of Selma and of Dallas County in their official capacity.

The only evidence as to the nature of the testimony before the grand jury which returned the indictment on which the instant trial was had was that of the foreman of the grand jury. He testified with reference to cases entered on the grand jury docket. Cases numered 43, 44, 45, 46, 47 and 48 were cases of first degree burglary in which this defendant was stated as the person so charged. In case No. 43 the witnesses before the grand jury were Mrs. Jean Heinz Rockwell and Capt. J. W. Baker. An indictment was returned in case No. 43, in which Mrs. Jean Heinz Rockwell is named as the person occupying and lodging in the house burglarized at the time. That is the indictment on which defendant was tried in the instant case. In respect to each of the other cases charged against this defendant, the evidence is that two witnesses testified before the grand jury. One was the name of a woman and the other that of Capt. Baker.

The evidence is that as to each case separately those persons appeared before the grand jury and gave evidence which was considered by them. There was no offer to prove the nature or effect of their testimony. The only evidence offered by the movant was that of witnesses, including Capt. Baker in an attempt to show that he extracted by improper means a confession from defendant, and therefore presumptively that is all that he testified to before the grand jury. There was no effort to show what Mrs. Rockwell knew and may have testified before them. In the first place, there was absolutely no evidence that Capt. Baker improperly extorted a confession out of defendant.

■ We recognize the requirement of section 86, Title 30, for the use of legal evidence before a grand jury. Under that statute the general rule is that when competent witnesses are examined by the grand jury or the grand jury had before them legal documentary evidence, no inquiry into the sufficiency of the evidence is indulged. Sparrenberger v. State, 53 Ala. 481.

Referring to that rule in Washington v. State, 63 Ala. 189, where the grand jury returned an indictment for burglary, the Court said that it could not inquire into the contention that, while there was proof before the grand jury that a burglary was committed, no legal evidence was given that accused was the guilty offender.

■■ That is the exact contention here made. There was testimony given by Mrs. Rockwell. She had a legal right to testify. What was the nature of that testimony could not be inquired into. According to those cases, if Mrs. Rockwell had been the only witness this motion should have been overruled. We cannot inquire into the nature of Capt. Baker's testimony and no attempt was made to do so. If legal evidence is given, we may add, an indictment is not subject to be quashed because there was illegal evidence also given. This rule is not abridged by Allen v. State, 162 Ala. 74, 50 So. 279. In that case reference was made to section 7776, Code of 1907, section 419, Title 14, Code of 1940, which prohibits

an *indictment* (or conviction) for seduction on the uncorroborated testimony of the woman. It was held that the Sparrenberger case, supra, did not prohibit evidence that there was before the grand jury no corroborating evidence as specifically required by that statute. It can be shown on a motion to quash an indictment that there was before the grand jury no competent witness or legal documentary evidence, but not its insufficiency or that there was also illegal evidence (except as required by statute applicable to that situation). Ex parte State ex rel. Attorney General (Gore v. State), 217 Ala. 68, 114 So. 794; Mackey v. State, 186 Ala. 23, 65 So. 330; Clark v. State, 240 Ala. 65(20–21), 197 So. 23. The motion to quash was properly overruled.

A jury was organized to try the cause. The defendant pleaded not guilty and not guilty by reason of insanity. During the progress of the trial objections to evidence were overruled and exceptions noted. We will not undertake to analyze each of them separately, but will discuss those which are important. We have examined the entire record and given consideration to all questions shown, whether discussed or not.

■ The first one we wish to discuss is the admissibility of a tape recording offered and received in evidence. Since it contained a confession by defendant, it is necessary also to inquire as to whether such confession was voluntary, or induced by force, coercion, threats, personal injuries or tiresome examination sufficient to destroy his volition, or hope of any sort held out to him. Of course any confession so obtained violates the constitutional rights of a person charged with the commission of a crime and cannot be used as evidence against him in a criminal case. Chambers v. Flordia, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716. It is different from the right to use evidence obtained by an unreasonable search and seizure of such person; for evidence so obtained may be used against him on trial in a state court for violating a state law without a violation of the Fourteenth Amendment. Wolf v. People of State of Colo., 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; Irvine v. People of State

of Cal., 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561.

We have often held that Alabama law and procedure do not prohibit the use of testimony so obtained on trial for a state crime in a state court. Oldham v. State, 259 Ala. 507, 67 So.2d 55; Ingram v. State, 252 Ala. 497, 42 So.2d 36.

■ It seems to be a well settled principle that a magnetic tape recording may be used as evidence when it is of matters otherwise legal, and provided the proper safeguards are shown to have been used so as to protect the recording against error or spoliation. The speakers as recorded should be properly identified and adequate safeguards taken to insure authenticity. Wright v. State, Ala.App., 79 So.2d 66; Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322; United States v. Schanerman, 3 Cir., 150 F.2d 941(6); State v. Perkins, 355 Mo. 851, 198 S.W.2d 704, 168 A.L.R. 920, annotation 927; Ray v. State, 213 Miss. 650, 57 So.2d 469; Williams v. State, Okl.Cr.App., 226 P.2d 989.

■ The evidence in this case justifies the use of the recording as evidence of matter which is legal and relevant otherwise. But objection was made that the recording was evidence of a confession by defendant, and that it did not sufficiently appear from the evidence that the confession was voluntary. The evidence was without conflict that it was voluntary. The authorities sustain our view that questioning a suspect in custody of the law is not prohibited by common law or the Constitution (nor by statute, we may add), and a confession so obtained is not for that reason alone rendered inadmissible. Phillips v. State, 248 Ala. 510, 28 So.2d 542. In this case the evidence showed without conflict that the officers did not intimidate appellant in any way. They were not armed when he made the recorded statement. He was in prison under protection against possible attack by others. But there was not shown to be threats of violence by the public or unusual excitement. He was not abused, nor questioned at such length and under such conditions as to break his resistance, but he gave details which were corroborative of that given by the State's chief witness. It is for the trial judge to determine whether the evidence shows that the confession was voluntary, and for the jury to give it such weight as they think proper. The decision of the trial court will not be disturbed on appeal unless it appears to be contrary to the great weight of the evidence. Reeves v. State, 260 Ala. 66, 68 So.2d 14; Dennison v. State, 259 Ala. 424, 66 So.2d 552; Myhand v. State, 259 Ala. 415, 66 So.2d 544; Fewell v. State, 259 Ala. 401, 66 So.2d 771.

■ The evidence here without conflict supports the finding of the trial court.

But appellant contends that he was denied the right to controvert the State's evidence in that respect. Before the court made a ruling on the admissibility of the alleged confession defendant's counsel offered "to put this defendant on the stand for the purpose of refuting certain allegations by the State with reference to the voluntary nature of what purports to be certain extrajudicial admissions and for no other purpose". The court declined to agree with defendant's counsel that his appearance as a witness could be limited to that inquiry.

■ Defendant had the legal right before the confession was admitted to introduce evidence of legal matter to refute that of the State tending to show that the confession was voluntary. People v. State, 256 Ala. 612, 56 So.2d 665; Vernon v. State, 239 Ala. 593, 196 So. 96; Lockett v. State, 218 Ala. 40(8), 117 So. 457.

In making this offer the defendant's counsel did not *inform the court just what facts he expected to prove by the witness*, except his conclusion that they would "refute certain allegations of the State" with reference to the voluntary nature of defendant's confession. We have long since held, notwithstanding section 445, Title 7, Code, that we will not reverse for such a refusal by the trial court. Flowers v. Graves, 220 Ala. 445, 125 So. 659; Alaga Coach Line Co. v. McCarroll, 227 Ala. 686, 151 So. 834, 92

A.L.R. 470; Strickling v. Whiteside, 242 Ala. 29, 4 So.2d 416.

Of course it is the privilege of a defendant in a criminal case not to testify, but he may elect to do so. Section 6, Constitution of Alabama.

At the time this offer was made the trial was proceeding; the jury had been selected and sworn, and the issues stated to them. Defendant had pleaded not guilty and not guilty by reason of insanity. All evidence tending to prove either of those issues was open to both parties. The State was offering a confession and had made a prima facie showing of its admissibility. The corpus delicti had been shown. If defendant saw fit or elected to testify as to that question, it was as to an issue then being tried. He would thereby subject himself on cross examination to be questioned as to any relevant matter pertaining to his guilt or innocence or sanity. If he proposed to testify to facts showing that the confession was unduly influenced, he certainly ought to respond to questions as to his guilt in fact and to any matter relevant thereto. He cannot restrict the nature of the relevant testimony he proposes to give. Kelly v. State, 160 Ala. 48, 49 So. 535; Carpenter v. State, 193 Ala. 51, 69 So. 531; Gast v. State, 232 Ala. 307, 167 So. 554; Brown v. State, 243 Ala. 529, 10 So.2d 855. Therefore, for two reasons the trial court cannot be put in error on account of such proposal.

There was also introduced in evidence a written confession signed by defendant while in Kilby. The confession was taken down by a stenographer, written up by her, read to defendant and signed by him. It was shown that this was voluntary on the part of defendant. The court allowed it as evidence without error.

The evidence showed that on or about March 18th, preceding April 24, 1953, Mrs. Stenson was in bed asleep at about 10:00 o'clock P.M. at her home in Selma when she was awakened: defendant was on top of her with a knife at her throat and threatened to kill her if she screamed, and that he had forcible intercourse with her. Mrs. Binford, on another occasion, found defendant in her bathroom in her home in Selma on May 1, 1953 at twenty minutes to eleven at night. He was there for about seven minutes and went out of the small bathroom window. No evidence of other details was offered.

The State offered this evidence solely on the question of intent and identity of defendant and his motive on the occasion then on trial, and the court instructed the jury that such evidence was received for that purpose only. Objection was overruled and defendant excepted.

We have pointed out "that evidence which goes no further than showing character generally or disposition to commit crime is, of course, inadmissible * * *, but if such evidence goes further than showing character and bears probatively on the intent with which the act was committed, it is none the less admissible though it might also tend to discredit the defendant's character." McKenzie v. State, 250 Ala. 178, 33 So.2d 488, 490; Noble v. State, 253 Ala. 519, 45 So.2d 857; Mason v. State, 259 Ala. 438, 65 So.2d 557.

Those two incidents mentioned above both have such peculiar qualities of a similar nature or pattern as to point to defendant as the guilty agent in respect to the offense here on trial, and to show that his intent was to ravish as alleged in the indictment. Johnson v. State, 242 Ala. 278, 5 So.2d 632; Robinson v. State, 243 Ala. 684, 11 So.2d 732; Daniels v. State, 243 Ala. 675, 11 So.2d 756; Brasher v. State, 249 Ala. 96, 30 So.2d 31; McKenzie v. State, supra; Noble v. State, supra; Mason v. State, supra.

We have examined with care the entire record and the exceptions noted as well as the legality of all the evidence offered against defendant regardless of whether exception was noted or not, and whether or not assigned as error. Title 15, section 382(10), Pocket Part Code. Errors were unnecessarily assigned. Title 15, section 389, Code. We find no error of the

100

trial court which was injurious to the defendant. Section 389, supra.

■ The oral charge of the court and those given as requested by the defendant correctly and intelligently covered every aspect of the law involved, including the burden of proof, the elements of the offense, the plea of insanity, and character evidence. This completely covered the few charges which the court refused.

We find no reversible error, and the judgment should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, STAKELY and GOODWYN, JJ., concur.

LAWSON and MERRILL, JJ., concur specially as indicated.

MAYFIELD, J., concurs in result.

LAWSON, Justice (concurring specially).

I cannot agree with that part of the opinion holding that the defendant was not entitled to testify as to the facts and circumstances concerning an alleged confession or confessions which the State introduced under the circumstances shown in the court's opinion without thereby subjecting himself to cross-examination as to matters pertaining to his guilt or innocence, sanity or insanity.

While I am not willing to say that the trial court should be reversed in this particular case because of its ruling on this point, I wish to record my position concerning that ruling.

MERRILL, J., concurs in the foregoing views.