## WILLIAM I. ALLEN

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. GRAND JURY—*swearing, and by whom.* As the statute does not require that the clerk of the court, or designate what officer, shall swear the grand jury, any officer authorized by law to administer oaths generally, may, under the direction of the court, administer the prescribed oath to them.

2. SAME—*presumption that they were properly sworn.* Every presumption is in favor of the correctness of the action of the circuit court in the swearing of a grand jury; therefore an affidavit in support of a motion to quash an indictment, on the ground that the grand jury were not sworn by one authorized to swear them, which stated that they were sworn by one A B, who was neither the clerk of the court, nor deputy clerk, was *held* insufficient, in not showing that such person had no authority to administer oaths generally.

3. HOMICIDE—*whether in self-defense.* In the case of a homicide, where it does not appear that the danger was so urgent and pressing that, in order to save the prisoner's own life, or to prevent his receiving great bodily harm, the killing of the deceased was necessary, or that the circumstances were such as to induce a reasonable and well-grounded belief of such necessity, and that the prisoner really acted under such reasonable belief, the killing can not be justified on the ground of self-defense.

4. Where it appeared that a state of enmity existed between the deceased and the prisoner, and that as the prisoner was coming out of a store, the deceased advanced upon him in a threatening manner, with his arms extended, but with no weapons in his hands or about his person, and that the prisoner stepped a step or two inside the door, drew his revolver and shot the deceased, from which shot he died, and that the

prisoner, instead of indicating regret for what he had done, rather expressed satisfaction, denoting that the act was deliberate and of revenge, it was *held,* that the case was not one of self-defense.

5. MANSLAUGHTER—*punishment fractional part of a year.* Under the statute defining the punishment for manslaughter, the jury may fix the term of the prisoner's confinement in the penitentiary at a given number of years and a fractional part of a year.

6. INSTRUCTIONS—*repeating.* Where refused instructions in a criminal case, so far as they contained correct principles of law, were substantially embraced in those which were given, it was *held* no error, as the court was not bound to repeat the instructions.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. BRYAN & KAGY, and Mr. B. B. SMITH, for the plaintiff in error.

Mr. JAS. K. EDSALL, Attorney General, and Messrs. RASER & GOODNOW, for the People.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The plaintiff in error was indicted, at the February term, 1875, of the Marion circuit court, for the murder of John G. Davis, and tried at the following March term, convicted of manslaughter, and sentenced to confinement in the penitentiary for eight and one-half years.

The error first assigned is, the overruling of a motion which was made to quash the indictment on the ground that the grand jury, which found the bill, were not properly sworn.

The motion was founded on an affidavit made by the defendant, that, as he was informed and believed, the grand jury were sworn by one Jacob O. Chance, and that he was neither the clerk nor deputy clerk of the court. The statute requires a certain prescribed oath to be administered to grand jurors, but does not designate that the clerk of the court, or what officer, shall administer the oath.

The statute confers upon a long list of officers the power to administer "all oaths of office, and all other oaths authorized

or required of any officer or other person," etc. We are of
opinion that any officer thus authorized by law to administer
oaths generally, may, under the direction of the court, law-
fully administer the prescribed oath to a grand jury. Every
presumption is in favor of the correctness of the action of
the circuit court in the matter, until the contrary is made to
appear. The affidavit did not negative that the person who
administered the oath was an officer authorized to administer
oaths generally. It did not appear that the grand jury were
not properly sworn, and the motion was properly overruled.

It is insisted that the verdict is against the evidence—that
the prisoner should have been acquitted on the ground that
he acted in self-defense in the commission of the homicide.

The evidence discloses that a state of enmity existed
between the deceased and the prisoner; that just before the
occurrence, the prisoner was sitting on the counter, about
fifteen feet from the door, in the store of Jones and Wilson,
in Kinmundy, Marion county. It was about seven or half-
past seven o'clock in the evening of November 25, 1874. The
deceased had looked in through the glass of the store door,
and seen the prisoner sitting on the counter, and placed him-
self a few feet north of the store door, for the purpose, no
doubt, of assaulting the prisoner when he came out. The
latter started to go out of the store, and as he reached the
door and opened it, and was standing in the door-way, the
deceased advanced toward him in a threatening manner, with
his arms extended; the prisoner stepped back a step or two
inside the door, drew a revolver, pointed it at the deceased
and fired, discharging a ball into the body of the latter near
the heart. The deceased sank down, was taken into a store
across the way, and died soon after. The deceased had no
weapon, and none was found upon his person. He and the
prisoner were about of the same size, the difference, if any, in
physical ability being in favor of the latter. It was a moon-
light night, there was glass in the top of the store door, large
glass show-windows on both sides of the door, a lamp near

each window, and a chandelier eight feet from the front of the store, which, when lighted up, made it, in the words of the testimony of one of the proprietors, "almost as light as day, out doors." The prisoner said, immediately after he shot deceased : "That is the way I do my business." He told the officer who arrested him afterward, that the revolver found with him was his, that "that was what I done the work with ; that it was loaded, except the one that Davis got."

The evidence presents no proper case of self-defense. The jury were fully warranted in finding that it did not appear that the danger was so urgent and pressing that, in order to save the prisoner's own life, or to prevent his receiving great bodily harm, the killing of the deceased was necessary, or that the circumstances were such as to induce a reasonable and well-grounded belief of such necessity, and that the prisoner really acted under the influence of such reasonable belief. There was that in the prisoner's declarations in respect to the homicide, which told against him. Instead of indicating regret, and that the life of a fellow-being had been reluctantly taken under the necessity of self-defense, they were rather expressive of satisfaction at what had been done, tending to denote that the act had been perpetrated deliberately, of set purpose, in a spirit of revenge.

There were six instructions asked for the defendant which the court refused to give, and there is claimed to be error in this respect. Had there been no other instructions given for the defendant, one or more of these refused instructions should have been given. But the court did give fourteen other instructions for defendant, and the refused instructions, so far as they contained correct principles of law, were substantially embraced in those which were given, and it was unnecessary that the same should be repeated.

Objection is taken, too, to the 11th instruction which was given for the people. In view of the facts, and other instructions which were given, we see no substantial ground of error in the giving of this instruction.

The further point is made, that the term of punishment fixed by the verdict of the jury is excessive, in embracing a fractional part of a year, it being for eight and one-half years. The statute provision is: "Whoever is guilty of manslaughter shall be imprisoned in the penitentiary for his natural life, or for any number of years." The objection is, that, under the statute, the imprisonment must be for one or more whole years only; that there is no power to fix the term of imprisonment for any fractional part of a year. We are of opinion that the verdict of the jury in this respect is warranted by the above provision of the statute.

The judgment must be affirmed.

*Judgment affirmed.*