McGinley v. Territory.

No. 1908, Okla. T. Opinion Filed Feb. 18, 1908.

(94 Pac. 525.)

GRAND JURY—Drawing—Fatal Irregularity. A jury box was prepared under an order of the court by leaving therein that portion of the names which had been taken by the county clerk from the jury lists of 10 precincts of the county from which jury lists had been properly returned by the judges of election that had not hitherto been withdrawn in the formation of juries, and by placing in said jury box names of persons from the other 17 precincts of the county from which returns of jury lists were not made by the judges of election in accordance with the law, which said names from said 17 precincts were equal in number to the full quota and proportion to which said precincts were respectively entitled, and were furnished by the board of county commissioners. Held that, under the rule announced in Sharp v. United States, 138 Fed. 878, 71 C. C. A. 258, said jury box was not prepared in accordance with section 6 of chapter 46 (section 3313) of Wilson's Rev. & Ann. St. 1903 of Oklahoma, and that a grand jury drawn from said jury box is illegal, and an indictment returned by said grand jury, on motion of the defendant, should be set aside. (Syllabus by the Court.)

*Error from the District Court, Logan County; before John H. Burford, Judge.*

N. D. McGinley was convicted of embezzlement, and he brings error. Reversed and remanded.

*Devereux & Hildreth* and *C. G. Horner,* for plaintiff in error.

*C. J. West, Dale & Bierer,* and *Ben F. Hegler, Jr.,* for the Territory.

Hayes, J. Plaintiff in error (who, for convenience, will hereinafter be called defendant) was indicted for the crime of embezzlement in the district court of Logan county on the 29th day of November, 1905, which was a day of the regular October,

1905, term. The indictment contained six counts. On the trial, however, the court withdrew from the jury all the counts except the second one, which count charges that the defendant, McGinley, being intrusted with six bonds, issued by school district No. 87 of Kay county, as agent of said school district No. 87, to sell the same, sold said bonds for the sum of $3,000, and converted the proceeds of the same, which proceeds were then and there the property of said school district.

Before pleading to the indictment the defendant moved the court to set aside the indictment on the ground that the grand jury that returned said indictment was not drawn and impaneled as provided by law. The defendant, in said motion, alleges in detail the irregularities complained of in drawing said grand jury; but since the contents of said motion are, in substance, as the facts hereinafter stated, we do not deem it necessary to set forth in full the contents of said motion. A stipulation of facts upon which said motion should be heard was filed. The court overruled the motion to set aside the indictment. Defendant filed a demurrer to the indictment which was overruled by the court, and the case thereupon was tried before a jury. The jury returned a verdict against the defendant, finding him guilty as charged in the second count of the indictment. A motion for a new trial was argued and overruled by the court, and exceptions were reserved, and the defendant was sentenced to imprisonment in the penitentiary at Lansing, Kan., for a term of two years.

Defendant seeks to reverse the judgment of the trial court on 11 assignments of error, but under the view taken by the court in this case it will be necessary to consider only the first assignment of error, which is that the trial court erred in overruling the defendant's motion to set aside the indictment, because of irregularities and illegalities in the formation of the grand jury that returned the same.

At the time the indictment in this case was returned, the statute providing for grand and petit juries and prescribing the manner of forming the same is found in chapter 46, §§ 3308-3319, Wilson's Rev. & Ann. St. 1903 of Oklahoma. The third section

of this chapter (section 3310) requires that the county clerk in preparing the pollbooks shall have printed thereon an oath to the effect that the judges of each election precinct when the polls are closed, at the time of making a poll of the votes cast, will select from the list of names on the pollbook to serve as jurors the number of names designated by the county clerk, and that in making such selection they will select only such persons as have the qualifications prescribed in the oath. It further provides that said oath shall be taken by the judges of the election before the same person who administers to them the oath to properly conduct the election; that, before delivering the pollbooks, the county clerk shall estimate the number of jurors that will be required to be drawn from each precinct to make up the number of 350, in the ratio that the vote cast at any precinct at the last general election bears to the whole vote cast in the county, and shall order the judges of election to return that number; that when the election is over the judges of election shall, under their oaths, select from the names on the pollbooks the number of persons to act as jurors designated by the clerk, and shall make a list of same, and sign and return it to the county clerk; that the county clerk shall write the names returned on the lists from all the precincts of the county on separate slips of paper, and place them in a box with lock and key, and keep the same locked, and, from the names placed in the box, grand and petit jurors shall be drawn; that the clerk of the district court, sheriff and county clerk of the county, in drawing a jury panel, shall take the box containing the names and thoroughly shake the same, and then in the manner prescribed shall draw therefrom names, until the required number of grand and petit jurors are drawn; that the names first drawn shall constitute the grand jury for the terms to which they are drawn. It further provides that, if from any cause the judges of election of any precinct fail to make returns of jurors from their precinct, it shall be the duty of the board of county commissioners to take the pollbooks returned from such precinct, and select the number of persons required to serve as jurors from that precinct.

Attorneys for the prosecution insist that the stipulation filed in this case in support of defendant's motion to set aside the indictment cannot be considered, for the reason that same is signed only by attorneys for the defendant, and that it nowhere appears that the prosecution in any manner assented to be bound by said stipulation. An examination of the record discloses the stipulation was not signed at its conclusion by the attorney for the prosecution, but on it appears this indorsement: "No. 1,305. Territory v. N. D. McGinley—Stipulation O. K. F. H. McGuire, County Attorney." From this indorsement, it appears to the court that said stipulation was considered a part of the record in this case, and that same was assented to by the county attorney who represented the territory in the prosecution of the case. It is not very material, however, whether the stipulation is considered a part of the record or not, for the reason that the motion to set aside the indictment is duly sworn to by the defendant, and since same was not controverted, the allegations therein stand as admitted. *Sharp v. United States,* 138 Fed. 883, 71 C. C. A. 258; *Neal v. Delaware,* 103 U. S. 394, 26 L. Ed. 567.

The irregularities in impaneling the grand jury that returned the indictment against defendant, complained of in defendant's motion to set aside the indictment, and as disclosed by the record in this case, are substantially as follows: At the regular election held in Logan county in November, 1902, 5,059 votes were cast. At that time there existed in Logan county 27 election precincts. The county clerk in preparing the pollbooks for the various election precincts at the election in the year 1904, failed in 17 of the precincts of said county to make any proper apportionment or estimate of the number of jurors that should be returned from each of said precincts, and failed to insert said number in blank oaths for the judges of election, and in 10 of the said precincts the judges of election took no oath, as required by law, to return the lists of jurors. In the other 10 precincts of the county correct estimates of jurors were made by the county clerk, the number inserted in the blank oaths, and proper returns were made by the judges of election under oath in the manner and form prescribed

by law. Following the election of 1904, the county clerk prepared a jury box, by using the list returned by the judges of election of the various precincts of the county, using the lists from those precincts from which the returns had been irregularly made, as well as the lists from those precincts from which returns had been made in conformity with the law. From the jury box thus formed, the juries were drawn for the different terms of court held subsequent to the election in 1904, and prior to the October, 1905, term of said court. A grand jury was drawn from said box for the October, 1905, term of the court, but, at the time said grand jury was impaneled, various attorneys appeared for their clients, and challenged the array, and the court, after hearing the evidence, and examining the pollbooks and election returns, sustained the challenge to said jury and discharged the same. The court then found that, of the 17 precincts from which returns of jurors had been irregularly made at the election in 1904, the returns from 1 precinct had been corrected by an order of the court. The court then ordered that all names that then remained in the jury box from the 16 precincts in the county from which the returns had been improperly made be taken from the jury box and that the board of county commissioners select names from said precincts in number equal to the full quota or proportion of 350 names that said precincts were entitled to, and that the same be returned to the county clerk of Logan county, and that he place the same in said jury box, thus leaving in said jury box all the names of jurors from those precincts from which jury lists had been properly returned that had not been drawn out from said jury box in the making up of juries for the terms of court held since said jury box was prepared.

The record further discloses that, of the names from the 10 precincts from which returns had been properly made, a great portion had been drawn out of the jury box in the formation of juries theretofore impaneled since the election in 1904, and that there remained in the jury box prepared under the order of the court, and from which the grand jury that returned the indictment in this case was drawn, only a part of the names to which said 10

precincts were entitled under the law. It was clearly the purpose of the court in making said order to have prepared a new jury box to meet the requirements of the rule announced in the case of *Sharp v. United States, supra,* which had been announced by the Circuit Court of Appeals a short time before said order was made by the trial courts; but we think the course directed by said order of the court was not a compliance with the statute, for the reason that the jury box thus formed did not contain names from the various precincts of the county in the proportion prescribed by law. We do not doubt that the court, upon ascertaining that the jury box had been prepared theretofore was irregularly and illegally prepared, had the right to order the same opened, and all the names taken therefrom, or to have entirely discarded said box and ordered a new box prepared, but we think that since the first jury box prepared after the election in 1904, which the trial court found had been irregularly prepared, should have been treated as no jury box at all, and the court should have directed the clerk and the county commissioners to do that which had never been done since the election in 1904, to wit, to form a valid jury box by the county clerk's placing therein all names of jurors from those precincts from which the returns had been properly made, and by the board of county commissioners' furnishing to the clerk lists of jurors from those precincts from which returns had not been properly made, to be placed in the jury box by the county clerk as prescribed by law. By pursuing this course a jury box, containing in the proportion from the various precincts of the county prescribed by law the names of persons that had been furnished the county clerk for jurors either by the judges of election or by the board of county commissioners, could have been prepared in the manner prescribed by law. The jury box formed under the order of the court, from which the grand jury that returned the indictment in this case was drawn, did not contain the names of persons from the various precincts of the county in the proportion the law requires, and never at any time contained names in such proportion, because there were 10 precincts of the county that did not have in said box their proportion of the names

of persons for jurors, because a part of the names of all of said precincts had been drawn from said jury box prior to the order of the court, and from several of said precincts over one-half of the names had been drawn.

In commenting upon the purpose of this provision, Justice Phillips, speaking for the court in *Sharp v. United States,* 138 Fed. 878, 71 C. C. A. 285, said:

"The evident purpose of the Legislature was, first, to place the judges of election upon their consciences under the pains and penalties of perjury in pursuing the course prescribed by the statute in selecting and placing the names of jurors in the jury box. In the second place, it was to prevent the packing of juries by drawing them from particular communities, by requiring the list to be made up proportioned to the number of voters in each precinct in the county."

The court further held in that case that this statutory provision for preparing the jury box is mandatory, and that when the statute is not obeyed, in the formation of a jury, the logical presumption is conclusive that it is hurtful to the defendant.

Able counsel for the prosecution insist, however, that the case of *Sharp v. United States* does not control in the case at bar, and was not binding upon the trial court, for the reason that the defendant, Sharp, in that case was charged with an offense against the criminal statutes of the United States, and not against a territorial statute, and for the reason that the Circuit Court of Appeals has not appellate jurisdiction over the judgments of the Supreme Courts of the territories in cases where prosecutions for violation of territorial statutes are made. To support their contention, the prosecution quotes the following language, from *Aztec Mining Co. v. Ripley,* 151 U. S. 79, 14 Sup. Ct. 236, 3 L. Ed. 80:

"By the fifteenth section of the Judiciary act of March 3, 1891, c. 517, 26 Stat. 826 [U. S. Comp. St. 1901, p. 554] the Circuit Courts of Appeals , in cases in which their judgments were made final by the act, were empowered to exercise appellate jurisdiction over the judgments, orders, or decrees of the Supreme Courts of the several territories; but as this case was not a case in admiralty, nor a case arising under the criminal, revenue, or patent laws of the United States, nor a case between aliens and

citizens of the United States, or between either of the classes defined by section 6 of that act, as cases in which the judgments or decrees of the Circuit Courts of Appeals should be final, and therefore the Circuit Court of Appeals for the Eighth Circuit properly declined to take jurisdiction."

But in *Ex parte Moran,* 144 Fed. 594, 75 C. C. A. 396, in which case the petitioner was charged with a capital crime, Judge Sanborn, speaking for the court, said:

"This court has the power to review in that way final decisions of the Supreme Court of Oklahoma in all cases in which the jurisdiction below is dependent upon the citizenship of the opposite parties to the suit, in all admiralty cases, in all cases arising under the patent laws, the revenue laws, and the bankruptcy laws, and in all cases arising under the criminal laws except in cases of the conviction of a capital crime."

In that case, the court, in commenting upon the language quoted, *supra,* from the case of *Aztec Mining Co. v. Ripley,* said:

"It is evident that the words 'of the United States' were either a mere inadvertence, or that it was intended to apply alone to patent or revenue laws. The structure of the clause in the statute is 'in all cases arising under the patent laws, under the revenue laws, and under the criminal laws.' There is nothing in the language employed by the statute to indicate that a review would not apply to cases arising under the criminal laws of the territory as well as those of the United States. All statutes enacted by the territorial government are under authority of the organic act; and decisions of the territorial courts, in the absence of some words of negation or manifest omission in the organic act, are reviewable either by the Supreme Court or by the United States Courts of Appeal; and such has been the practice on appeals and writs of error from the Indian and Oklahoma Territories since the creation of the Courts of Appeals."

In the case of *Miller v. Territory of Oklahoma,* 149 Fed. 330, 79 C. C. A. 269, the jurisdiction of the Circuit Court of Appeals, to review the judgments of the Supreme Courts of the several territories in the character of cases of the case at bar, was presented and passed upon directly by that court, and it held in that case that the Circuit Court of Appeals had jurisdiction to review a conviction for grand larceny in violation of the laws of a territory.

We therefore conclude that the construction of the statute for preparing and impaneling juries as laid down by the Circuit Court of Appeals in *Sharp v. United States* was binding upon the trial court and upon the Supreme Court of the territory of Oklahoma, and that the defendant's motion to set aside the indictment should have been sustained by the trial court.

However much this court may deplore that any of its decisions may result in permitting any one who has violated the law to go unpunished by reason of the fact that the statute of limitation may have run against the offense with which such person is charged, it still remains the duty of this court to apply as expeditiously as possible the law as it has been written by the authorized representatives of the people, and as interpreted by the highest court to which jurisdiction was given in cases similar to the case at bar.

It results that the judgment of the trial court must be reversed, and the cause remanded to the district court, with directions to set aside the judgment of conviction, and set aside the indictment.

All the Justices concur.