Charles O. HAMMERS, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12667.

Court of Criminal Appeals of Oklahoma.

April 1, 1959.

1098

Green, Green, & Green, by J. Fred Green, Sallisaw, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Plaintiff in error, Charles O. Hammers, defendant below, was charged in the District Court of Muskogee County, Oklahoma, by indictment of a grand jury, with the crime of conspiracy to bribe a public officer. He was tried by a jury, convicted, and his punishment fixed at a fine of $500. Judgment and sentence were entered accordingly, from which this appeal has been perfected.

The defendant complains of the conviction for numerous reasons. First, he contends the trial court erred in overruling his motion to set aside the indictment for the reason the grand jury was not drawn, selected and empaneled according to law. The record discloses from Judge Wilcoxen's testimony, taken at the hearing on the motion, that on February 27, 1957, he ordered the convening of a grand jury to assemble on March 18, 1957. On this order, twenty-four jurors' names were drawn from the jury wheel. 38 O.S.1951 §§ 19, 20, 21. This was done according to the provisions of 38 O.S.1951 § 21, reading, in part, as follows:

> " * * * If a grand jury is ordered, the first names drawn to the number stated in the judge's order, not to exceed twenty-four * * * shall be empaneled from said persons. * * * Additional and other drawing of as many names as the court may order may be had at any such time as the court or judge may order for the completion of a grand or petit jury panel, or for the empaneling of a new grand or petit jury, during any term of court, if, in the judgment of the court, the same shall be necessary, or if, for any cause the court, in its discretion shall deem other jurors necessary. The Court may excuse or discharge any person drawn and summoned as a grand or petit juror, whenever, in its discretion, such action shall be deemed expedient. * * *"

These specific provisions as set forth have come down to us unaltered since statehood. 38 O.S.1951 § 29 requires substantial compliance with the provisions of the statutes, and this section has also come to us unaltered since statehood. These observations are necessary since the cases construing the foregoing provisions were based upon the original enactments as they existed at the time of statehood.

It appears in reading 38 O.S.1951 § 21, supra, that the twenty-four names drawn for the grand jury must be exhausted first, and thereafter other additional names may be drawn for completion of the grand jury, or the empaneling of a

new jury. Notwithstanding these provisions of the statute, on March 13, 1957, Judge Wilcoxen ordered eighteen additional grand jurors be drawn to appear for service on March 18, 1957. At the time he issued the order of March 13, the judge testified, he did not know how many grand jurors he had excused from the original panel of twenty-four. On both lists, he said, he probably excused as many as eight or eleven. He testified that he had the names of the original twenty-four on one list and the names of the additional eighteen on another list. He testified he did not try to exhaust the first list before resort to the second list. He stated he just selected the ones he wanted from both lists. In other words, the jury was virtually twelve men congregated by the court contrary to authority hereinafter set forth. He went so far as to say some were present from the two lists he did not intend to call; that he had made up his mind from the two lists whom he wanted to serve; only those specially chosen were called; and that he did not inquire as to disqualifications under the law, 38 O.S.1951 § 28, but used his own judgment whether it was good or bad.

In Viers v. State, 10 Okl.Cr. 28, 134 P. 80, 84, it was said:

"Section 3692, [supra] (substantially 38 O.S.1951 § 21) expressly provides that the first names drawn, not to exceed 24, if a grand jury is ordered, shall be summoned as grand jurors, and the grand jury shall be impaneled from said persons. It permits the transfer of names summoned as grand jurors to the petit jury panel when they are not selected on the grand jury, but it does not permit the transfer of names on the petit panel to the grand jury panel when not used on the petit jury. It provides specifically for additional and other drawings under order of the court to complete a grand or petit jury panel."

Therein, it was further said:

"The grand jury must be selected, drawn, and impaneled as provided by law. The grand jury does not by our law consist of 12 men congregated by the mere order of the court. It consists of 12 men selected, drawn, and impaneled according to the requirements of the law, and *if the law is not followed, it is an incompetent grand jury.* Our law provides that any one indicted by such a grand jury may question their power by a motion to set aside the indictment, and he can not be required to answer to a charge against him unless it has been preferred according to the forms of law. The importance of securing fair-minded, impartial, intelligent men for grand jurors, who without bias or prejudice will weigh the evidence, and be governed by it alone, cannot be overestimated. * * * The petit jury panel cannot very well be packed against a defendant on trial, the defendant by his counsel may examine a petit jury panel minutely as to qualifications, bias, or prejudice, and may challenge for cause, and in addition is entitled to his peremptory challenges allowed by law, but in the case of a grand jury panel, the parties to be investigated by the grand jury rarely ever know in advance, of their investigation, and have no opportunity to examine the grand jury panel as to bias or prejudice, or to challenge for cause or peremptorily, and this is one reason why it is not permitted, under the law, to select members of the grand jury from the body of the county, under an open venire." (Emphasis supplied.)

By the same token, the judge may not select the jury from pre-determined lists of jurors. Further therein, it was said:

"It will also be noticed that section 5714, [supra] (22 O.S.1951 § 329) provided for the filling of all vacancies that may occur at any time in the grand jury panel, and that *when a vacancy exists the court must order the names of additional jurors drawn from the jury box in the same manner as the original grand jurors were drawn, and they shall be summoned in the order in which their names were drawn from*

*the box,* thus confirming our conclusion that the drawing and impaneling of the grand jury must be of persons whose names shall be drawn from the jury box, * * *. The statutory direction is clear and explicit." (Emphasis supplied.)

 It is apparent from the foregoing that the law intends a fair and impartial grand jury, fairly and impartially chosen. To assure this, the twenty-four names, or any additional drawn from the jury wheel, should be drawn therefrom as in the case of petit jurors. The court may examine and excuse any of the jurors for bias or prejudice or other legal ground, 38 O.S.1951 § 28, going to qualifications, which shall be deemed expedient, 38 O.S.1951 § 21, but that does not mean he shall act arbitrarily or from malice or favoritism. He needs no greater power than is conferred by these prescriptions and he should seek to exercise no more. The secrecy of the names drawn in the cases of petit jurors and grand jurors, such as certifying and sealing the twenty-four names in an envelope and keeping them secret, under oath of the clerk until time for empaneling the jury, 38 O.S. 1951 §§ 24, 25, 26, at which time they should be drawn from the envelope, indicates a legislative intent that there is no need for the judge to hand-pick the jurors from pre-determined lists, in fact, it is not intended he be provided such a list. This is important for the reasons set forth in Viers v. State, supra, although these provisions were not then in existence, being enacted in 1949. Juby v. State, 10 Okl.Cr. 677, 138 P. 1197. The twenty-four names should then constitute the panel from which the grand jurors are chosen. When twelve legally qualified jurors are empaneled, they shall constitute the grand jury. If twelve such jurors are not available from among the panel of twenty-four, then the court may draw an additional panel. There is no other excuse for drawing other than twenty-four names under the provisions of the statutes.

 Under the procedure adopted herein, which was not according to law, where is the line to be drawn? Shall the court be permitted to ignore the plain provisions of the statute? If the trial court may order the original twenty-four jurors and then an additional eighteen jurors before the original panel is exhausted, and from these hand-pick the grand jury, what is to restrain him from calling any number of additional jurors without limit, hand-pick them, and pack the jury with his victims' enemies, or as the case might be, pack it with his friends as an act of favoritism to some to be investigated? No man would be secure from false accusation under such conditions where persecution is the object and the state would be helpless if absolution was the objective. The statutes were written and designed to prevent such selection of grand jurors and it is the court's duty to avoid even the appearance of such selection. It is the appellate court's duty to see that the grand jury is empaneled according to law, where the trial court fails so to do.

 We cannot excuse the method herein employed on the ground there was substantial compliance with the law as by statute provided. 38 O.S.1951 § 29. It has been said there must be what appears as an honest effort to conform to the law. Gravitt v. State, 44 Okl.Cr. 45, 279 P. 968; Smith v. State, 46 Okl.Cr. 160, 287 P. 1103. The statute says the grand jury shall be picked from among the first twenty-four names drawn, Viers v. State, supra, and the names first drawn, if qualified, shall constitute the grand jury. But, of course this would not be true, as was said in McGinley v. Territory, 1 Okl.Cr. 24, 94 P. 525, if some are discharged when the judge deems such expedient within his discretion. And, we do not read the statutes to mean that the trial court may draw two or more panels of grand jurors from the jury wheel, list them, and carry the lists around with him from which to hand-pick the jurors. The names drawn are to be delivered to the clerk by him. If it were so intended, why the sealing of the names in an envelope and binding the clerk to secrecy as to the names drawn as provided in 38 O.S.1951 §§ 24, 25, 26? As indicated in Viers v. State, su-

pra, a petit jury cannot be packed against an accused because of the safeguards provided in challenges for cause and peremptory challenges, but such is not the case in grand jury selection. The law provides its own protection against such procedure when its plain provisions are observed. It is of such vital importance to the citizen it must be substantially observed, and nothing less will be sustained.

 We are not unmindful that under the law of Oklahoma, statutes are to be liberally construed to effect the objects for which they are enacted, but this does not mean that we are to ignore a substantial invasion of defendant's rights. State v. Pollock, 5 Okl.Cr. 26, 113 P. 207. We do not intend to say that the learned judge who impaneled the grand jury in this case deliberately set about to hand-pick the jury, but we mean to say that the practice here employed creates the opportunity and breeds the atmosphere for such contrary to the plain provisions of the statute which the law will not tolerate and we cannot approve. In the interest of justice, we cannot sanction the procedure adopted herein for to do so would create the opportunity for personal selection of grand jurors which is contrary to both the spirit and the letter of the law. We are convinced the provisions of the statutes were designed to obviate such procedure as herein pursued. We are therefore of the opinion that the method employed in drawing and impaneling the grand jury in this case was not in substantial compliance with the statute, and the grand jury so impaneled was incompetent under the law to act.

 The defendant next contends that the grand jury was not sworn as provided by law and therefore any indictment returned by them would be without legality or effect. The facts, as sworn to by Judge Wilcoxen, are that he appointed Mr. Paul Marsh as foreman of the grand jury, 22 O.S.1951 § 323, and administered the formal oath to him, 22 O.S.1951 § 324. He must have grown weary, for he then directed the foreman to administer the oath to his associate grand jurors, and he read to them the same oath he had taken. The court thus did not follow the provisions of 22 O.S. 1951 § 325, reading as follows:

"The following oath must be immediately thereupon administered to the other grand jurors present:

"The same oath which your foreman has taken before you on his part, you and each of you shall well and truly observe on your part. So help you God."

In this connection, 22 O.S.1951 § 332 provides:

"The foreman may administer an oath to any witness appearing before the grand jury."

Nowhere in the statutes do we find any authorization for the foreman of the grand jury to administer the oath to anyone other than witnesses. 51 O.S.1951 § 21 provides who may administer oaths generally, and we do not find the foreman of a grand jury therein authorized.

There is a dearth of authority on this question, but in Milton v. State, 7 Okl.Cr. 407, 124 P. 81, 85, this Court said:

"All that is necessary is that the oath was administered by the judge or the clerk of the court in the presence of the court."

Or, the judge may direct the deputy clerk to administer it. In Allen v. People, 77 Ill. 484, clearly applicable herein, it was held:

"As the statute does not require that the clerk of the court, or designate what officer, shall swear the grand jury, any officer authorized by law to administer oaths generally, may, under the direction of the court, administer the prescribed oath to them."

28 C.J. 784, § 54, n. 86; 38 C.J.S. Grand Juries § 20, n. 78, p. 1010. Our statutes do not designate whether the judge or some officer of the court should administer the oath to either the foreman or the grand jury, yet they do designate who may administer oaths, 51 O.S.1951 § 21, supra, and the

foreman of the grand jury is not so named. His power in this regard is limited by 22 O.S.1951 § 332. We are of the opinion that the oath to both the foreman and the other grand jurors under the foregoing statutes should have been administered by either the trial judge or the clerk of the court or deputy clerk.

There is some authority for the proposition that if an oath is administered under the direction of the court, even though by one incompetent to administer oaths, it is a valid oath. 46 C.J. 841, § 7, n. 91; 67 C.J.S. Oaths and Affirmations § 5(b), n. 46, p. 6; United States v. Howard, D.C., 132 F. 325; Masterson v. State, 144 Ind. 240, 43 N.E. 138. This is judicial legislation on which we look with disfavor.

Notwithstanding such holding, it is generally held:

"An oath, to be effective, must be administered by some officer authorized by law to administer oaths."

46 C.J. 840, § 6, n. 73; 67 C.J.S. Oaths and Affirmations § 5(a), n. 27, p. 5; Crockett v. Cassels, 95 Fla. 851, 116 So. 865; Asher v. Sizemore, Ky., 261 S.W.2d 665. Under the provisions of our statutes, we are of the opinion that the foreman's oath to the grand jury was ineffective to constitute the grand jury a lawfully organized body.

It is further contended that the trial court erred in not dismissing the indictment for the reason the county attorney was permitted, in his official capacity, to express his opinion as to the sufficiency of the evidence before the grand jury. The record shows the county attorney admitted he told them "that under the law *and the testimony* presented I thought they should be indicted on that charge. * * * I told them that under the law and under the testimony they had heard that * * * it was the judgment of the county attorney's office that the defendants were guilty."

22 O.S.1951 § 340 provides, in part:

"The grand jury may at all reasonable times ask the advice of the court or of the county attorney. The county attorney may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them and may interrogate witnesses before them whenever he thinks it necessary, but no other person is permitted to be present during their sessions except the members and a witness actually under examination and no person whosoever must be permitted to be present during the expression of their opinions or the giving of their votes upon any matter before them."

This Court has spoken on the conduct complained of by the defendant. In Blake v. State, 54 Okl.Cr. 62, 14 P.2d 240, 243, quoting from Blau v. State, 82 Miss. 514, 34 So. 153, 155, it was said:

"The grand jury may at all reasonable times during the discharge of their duties appeal either to the court or to the prosecuting attorney for advice, but this advice must be restricted to matter of law, sufficiency of service, and proper dispatch of the public business. Neither the court nor this officer can say to the grand jury that the facts, as shown by the evidence, are sufficient to authorize them to find a bill."

These rules have been announced in numerous other cases. Shattuck v. State, 11 Ind. 473; Commonwealth v. Bane, 39 Pa. Dist. & Co. R. 664, 674, where it was said:

"* * * any attempt to influence their action or to give effect to the evidence adduced is grossly improper and impertinent. Commonwealth v. Bradney et al., 126 Pa. 199 [, 17 A. 600]. Every man, whatever the offenses of which he may be suspected, is as much entitled to the just, impartial, and unbiased judgment of a grand jury as he is to that of a petit jury on his final trial. It is as essential that the one body as the other should be permitted to act free from sway or control from any source, and without fear or favor. The temptation to disregard these safeguards of the rights of persons ac-

cused is often great, though, happily, the instances are few where it has been yielded to; but this is one of them of a character so flagrant and shocking that no American court could tolerate it, and it is our duty to say so with emphasis. Commonwealth v. Smith, 185 Pa. 553 [40 A. 73]."

Miller v. State, 42 Fla. 266, 28 So. 208; Maginnis' Case, 269 Pa. 186, 112 A. 555; Attorney General v. Pelletier, 240 Mass. 264, 134 N.E. 407, 420, holding:

"Its purpose (statute) was sedulously to preserve in its integrity the absolute freedom of the grand jury from every outside influence. It would be a mockery of constitutional rights and obligations to permit the district attorney, because of his presence with the grand jury, secretly to exercise a control which the court is forbidden to exercise even openly.

\* \* \* \* \* \*

"\* \* \* He (prosecuting officer) cannot participate in the deliberations or express opinions on questions of fact or attempt in any way to influence the action. His duty is ended when he has laid before the grand jury the evidence and explained the meaning of the law. The weight and credibility of the evidence is wholly for the grand jury. He should refrain from expressing an opinion on the facts even if asked."

United States v. Wells, D.C., 163 F. 313; 38 C.J.S. Grand Juries § 40, p. 1042, n. 92–96; 28 C.J. 803, § 96, n. 81–83. It clearly appears the conduct of the county attorney is neither sanctioned by statute nor by the adjudicated cases. Exhortations and factual interpretations are improper. The members of the grand jury should be permitted to act free from sway or control from any source and without fear or favor. 24 Am.Jur. 861, § 40, n. 13; Collier v. State, 104 Miss. 602, 61 So. 689, 45 L.R.A.,N.S., 599. We are of the opinion that the county attorney's expressions of opinion as to the guilt of the persons under investigation and

as to the weight of the evidence in support thereof was highly prejudicial and constitutes substantial error.

 Further, the defendant contends that the wire recording taken by Jack Green of conversations with Highers and Scott which was offered before the grand jury was not properly identified as that made by Jack Green. The record discloses that the wire recorder, called a Minifone, was placed on Jack Green by the county attorney, his assistant, and one Harlow Wagoner. He then made contact with Highers and Leslie Scott and recorded certain conversations had with them concerning their conduct in certain instances. After the recording on the Minifone wire recorder was made, the county attorney related, a tape recording was taken from the wire recording because the grand jury could not hear the Minifone recording except over ear phones. He related that James Keitel, a radio engineer, made the tape recording from the original. It appears that recording was made in Green's presence. When the recording was offered to the grand jury, there was a fatal break in the chain of identification as disclosed by the county attorney's testimony on the motion to dismiss the indictment, as follows:

"Q. Do you know if Jack Green made any mark of identification of any kind on the original wire recording or on the tape, either one, so he could identify them later from his own mark of identification? A. I don't know whether he put a mark on it or not but he could identify it from his own voice and the voice of the man he was talking to. He may have put a mark on there, I don't know, I'm not sure. I wouldn't say he didn't.

"Q. Was he present in the grand-jury room at the time the recording was being played so he could identify positively at that time that recording as being a true transcription of the recording he had originally made? A. He identified the tape. He testified

that he had heard the tape and that he had heard the voices and that it was his voice and the voice of the man he was talking to and that it was the exact conversation that he had had with him. He identified it that way.

"Q. Was it played in his presence before the grand-jury so that he could tell the jury that it was the same tape? A. No, we didn't leave him in there when it was played but he did identify it before it was played."

This evidence given by the county attorney himself establishes that Green, who took the recording of his conversation with Scott and Highers, was not present at any time the tape recording was played to the grand jury. He only identified the tape, not the recording. This would be comparable to identifying the paper on which a confession was written and not identifying its contents. It is interesting to note further in this connection that Mr. Keitel, who played the recordings, had no connection with taking the recording. He was not present when the Minifone recording was made. He could not and did not attempt to identify the voices. The record shows the county attorney and his assistant identified the voices although they had not been present at their recording. What they said by way of identification was pure hearsay contrary to 22 O.S.1951 Sec. 334. To clarify the first tape recording and to cut out the background noises, a second tape recording was made. The county attorney testified at the hearing on the motion to set aside the indictment that there were no identifying marks on these recordings from the wire recording. He was asked how he could tell them apart, and he replied: "I don't know. I don't know how you can tell them apart."

In Fikes v. State, 263 Ala. 89, 81 So.2d 303, 311, it was said:

"It seems to be a well settled principle that a magnetic tape recording may be used as evidence when it is of matters otherwise legal, and provided the proper safeguards are shown to have been used so as to protect the recording against error or spoliation. The speakers as recorded should be properly identified and adequate safeguards taken to insure authenticity. Wright v. State, [38] Ala.App. [64] 79 So.2d 66; Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322; United States v Schanerman, 3 Cir., 150 F.2d 941(6); State v. Perkins, 355 Mo. 851, 198 S.W.2d 704, 168 A.L.R. 920, annotation 927; Ray v. State, 213 Miss. 650, 57 So.2d 469; Williams v. State, Okl.Cr.App., 226 P. 2d 989."

This attempted identification was insufficient. Such procedure lays open the possibility of substitution of tapes and voices and incorrect identification. The mere possibility of such is enough to prohibit us from approving this procedure. The proper procedure would have been to have the recording played in Green's presence before the grand jury. Green then would have been in a position to identify the recording of the voices as taken from his wire recording. This would have been proper since it appears from the record that he was present when the tape was made from the wire recording. It was essential to the proper identification of the recording that he identify the contents and not just the spool and tape, since spools and tapes generally per se disclose nothing unusual as to identify. Even his mark on the spool or tape would not have identified the voices. In any event, it was the identification of the contents of the same that was essential to the authenticity of the recording before the grand jury and not the mechanical devices for its reproduction. This type of evidence before either grand juries or petit juries has been approved by this Court, when properly identified. We have said that the use of recordings and the admissibility thereof is proper when proper foundation is laid by the person with respect to the use of this method of reproducing the voice of the accused. Williams v. State, 93 Okl.Cr. 260, 226 P.2d 989; Leeth v.

State, 94 Okl.Cr. 61, 230 P.2d 942; Hurt v. State, Okl.Cr., 303 P.2d 476. We are of the opinion these sound recordings were not properly identified, were thus incompetent and therefore improperly and erroneously presented to the grand jury.

 The presence of Mr. Keitel as a witness before the grand jury in playing back the recording he had made from the wire and first tape recording is unauthorized by law. Even though he did nothing other than play the machine, and said nothing, his presence constituted a threat to improper influence or suggestion. He personally knew nothing as to the defendant except pure hearsay. Moreover, we believe his presence was unnecessary. With the ordinary sound producer and with thirty minutes training, the county attorney could have played it himself and thus obviated Keitel's presence before the jury. It is the duty of the county attorney to avoid presenting incompetent witnesses and evidence against one under grand jury investigation. He is not only the custodian of the state's security, but he is also the guardian of the rights of one under investigation. Hereinafter, we will discuss who are authorized persons, under our law, before the grand jury.

 It appears the county attorney and his assistant engaged with the grand jury in a "round table discussion about the recordings. Everybody was talking back and forth about it." This was highly improper, for, as hereinbefore said, his duty was limited to presenting the evidence and giving legal advice. Attorney General v. Pelletier, supra. It was clearly not within his province to discuss the evidence with the jury.

 It also appears that the tape recording was not audible in some instances and it was necessary for it to be played back again and again. It likewise appears that the county attorney and his assistant would interpret what was reputedly said. To be admissible in evidence before the grand jury, such recordings must be audible and understandable without the aid of explanation by the county attorney as to its contents. He not having been present when it was made, his attempt at identification was highly improper, and because he was not before the grand jury as a witness and was without authority of law to speak in that capacity.

Finally, the defendant contends it was error for the district judge to be present in the grand jury room. The record reveals that the trial judge testified he was before the grand jury "I don't recall how many times. I suppose two or three times. It could have been two * * * or three." Twice, he related, he went before the grand jury to grant immunity to Mr. and Mrs. Green. On each occasion he went before the grand jury to grant immunity to witnesses, he said.

 22 O.S.1951 § 493 provides, in part:

"The indictment or information must be set aside by the court, in which the defendant is arraigned, and upon his motion in any of the following cases:

* * * * * *

"3. When a person is permitted to be present during the session of a grand jury while the vote on the finding of the indictment is being taken, * * *."

These provisions must be construed together with the provisions of 22 O.S.1951 § 340, supra, if we are to arrive at the legislative intent. 22 O.S.1951 § 340 permits the county attorney to be before the grand jury at all times for advice and to interrogate witnesses, but in no uncertain terms it states positively, "but no other person is permitted to be present during their sessions except the members and the witnesses actually under examination." Then it says, "and no person whosoever must be permitted to be present during the expression of their opinions or the giving of their votes * * *." This is mandatory language which means that only the county attorney and the witness shall be present in the sessions of the grand jury

and then they must retire while the grand jury is deliberating or voting. When construed in light of § 340, § 493 of Title 22 can mean but one thing. When the vote is being taken, if the county attorney or anyone else unauthorized remains therein, the indictment must be set aside. We do not believe the provisions of § 493 were intended to negative any of the provisions of § 340, but are ancillary thereto. It was not intended to provide that the only grounds for setting aside the proceedings was when an unauthorized person was in the grand jury room during the voting; it did not intend to repeal the provisions of § 340; and it does not provide on no other grounds shall the indictment be subject to attack, including the presence of unauthorized persons in the grand jury room. To so hold would emasculate the plain provisions of § 340 against intrusion by any unauthorized person during the grand jury sessions. These provisions were intended to prohibit the presence of unauthorized persons in the grand jury room at any session of the grand jury, not just while voting is in progress. In so far as Middleton v. State, 16 Okl.Cr. 320, 183 P. 626, holding that the indictment may be dismissed because of the presence of an unauthorized person in the grand jury room only when the grand jury is voting, and when it is reasonably probable that prejudice resulted therefrom, conflicts with the foregoing expression, it is hereby overruled. The purity of the system can be maintained only as prescribed in the Hartgraves and Coleman cases, infra, and not by fudging here and chiseling there. Prejudice must be presumed in grand jury cases as it is in cases of the judge's invasion of the petit jury room.

 This Court has held that the judge has no place in the petit jury room, or may not converse with the petit jury in any place other than the court room. Lewis v. State, 73 Okl.Cr. 172, 119 P.2d 91, wherein we quoted with approval from State v. Wroth, 15 Wash. 621, 47 P. 106, 107:

"In the discharge of his official duty, the place for the judge is on the bench. As to him, the law has closed the portals of the jury room, and he may not enter. The appellant was not obliged to follow the judge to the jury room in order to protect his legal rights, or to see that the jury was not influenced by the presence of the judge; and the state cannot be permitted to show what occurred between the judge and the jury at a place where the judge has no right to be, and in regard to which no official record could be made."

This is but an indication as to the judge's place and seat for the exercise of his duty, in the open court room. Ford v. State, Okl.Cr., 330 P.2d 214. The same principle has virtually been announced in relation to grand juries. In Coleman v. State, 6 Okl. Cr. 252, 118 P. 594, 605, it was said:

"The powers of the grand jury are plenary, and, after the grand jury has been duly organized, the largest part of their legitimate functions are performed by them as a separate and independent body, acting by themselves and separate and apart from the court, and in their deliberations or actions they are not subject to the control of the court * * * other than that which they may receive in the charge of the court before they proceed to enter upon their duties or by instructions subsequently given them *in open court.*" (Emphasis supplied.)

In Hartgraves v. State, 5 Okl.Cr. 266, 114 P. 343, 33 L.R.A.,N.S., 568, syllabus 1(c) reads:

"(c) No person has a right to be in a grand jury room during any of their proceedings while investigating a criminal charge except the witness then being examined and the attorney authorized by law to represent the state in such examinations; and, if any other person is in the grand jury room during any part of their investi-

gations, an indictment found by them as the result of such investigation should, upon motion of the defendant, be set aside."

In the body of the opinion, it was said:

"The law therefore prohibits all persons from being in the grand jury room except the officers authorized by law to examine witnesses and the witness to be examined, and the presence of any other person in the grand jury room at any stage of the proceedings when a witness is being examined, or when the grand jury are considering the advisability of finding an indictment vitiates the entire proceedings. There is no exception to this rule. The sessions of the grand jury being secret, it is impossible for a defendant to protect himself against danger from this source. Therefore the law protects him by rigidly excluding from the grand jury room all persons except those expressly authorized by law to be present. Fairness and justice are the essential elements of every step taken in the prosecution of criminal cases in Oklahoma. We heartily indorse the statement contained in the case of United States v. Edgerton (D. C.) 80 Fed. [374] 375, which is as follows: 'It is beyond question that no persons other than a witness undergoing examination and the attorney for the government can be present during the sessions of the grand jury. The rule is inherent in the grand jury system with all the force of a statutory enactment. The cases where bailiffs and stenographers have on occasions been temporarily present in the grand jury rooms are only apparent exceptions. The rule in its spirit and purpose admits of no exception. * * * There must not only be no improper influence or suggestion in the grand jury room, but, as suggested in Lewis v. [Board of] Commissioners, 74 N.C. 194, there must be no opportunity therefor. If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury. * * *'

"We know that numerous and respectable authorities can be found holding to the contrary, but an investigation will show that in those cases the constitutional and statutory provisions upon which they are based with reference to grand juries are very different from ours. But, even if they were not, we would not hesitate to say that it is unfair, unjust, and illegal to allow any person to be in a grand jury room when witnesses are being examined, unless such person was before said grand jury as a witness or was there as a regular officer of the law in the discharge of his duties as such."

█ We know of no reason for the trial judge's invasion of the grand jury room in this case. Immunity to the witnesses should have been granted in the open court room as all his contacts with the grand jury should have been. If we excuse the conduct in this case, who will set the bounds for other abuses that may follow? The law is clear that all unauthorized persons shall be kept from the grand jury room, and the judge is one of those persons. When the grand jury wishes to communicate with him, it should ask to be taken before the judge in open court for that purpose, even to extending immunity to witnesses, since the law grants no exceptions. Under our law, the conduct of the judge in this case in going into the grand jury room as set forth was error.

For all the foregoing reasons, the trial court must be reversed for failure to dismiss the indictment and the cause remanded. It is so ordered.

POWELL, P. J., and NIX, J., concur.