TYSON, Judge.
The appellant was indicted for robbery in the first degree growing out of an incident which occurred on September 24, 1980, at the Jitney Jr. convenience store in Arab, Alabama. The jury found the appellant guilty of robbery in the first degree and following a sentencing hearing, the trial court fixed punishment at 20 years’ imprisonment.
Mrs. Sue Collier testified that she was cashier of the Jitney Jr. store and on duty at about 11:00 o’clock on September 24, 1980, and that another girl named Gay Haynes had also been working that day. She stated that Mrs. Haynes had just left when the appellant drove up and parked in front of the store. He came in and indicated that he wanted to purchase some gasoline. She described the vehicle that the appellant drove as being a large, dark green, older model, perhaps a Buick. She indicated that no one else was in the store at the time and that the appellant told her that he wanted to get some gas. She asked him how much and he said that he was not sure. Mrs. Collier told him he would have to leave a deposit with her. She said that the appellant stuttered a few moments, went out and said that he would come back and pay her. Henson then left the store and within a few moments returned and pointed a blue steel pistol at her and told her that this was a holdup. She stated that he then went to the cash register and removed the proceeds, amounting to $150.00, and that he also took a bank bag which was underneath on a shelf, but Mrs. Collier explained this only had receipts for deposits, not money in it. She stated that the pistol was pointed at her the entire time as the appellant removed the monies from the cash register and took the bank bag. Mrs. Collier indicated that the Jitney Jr. Store Number 8 was owned and operated by the Jo-Nee Corporation and was located on North Main Street in Arab, Alabama.
Mrs. Collier stated that she immediately called the police and a few moments later they answered the call and she gave them a description of the appellant and of his clothing and of the dark green automobile which he was driving.
Mrs. Collier also testified that she subsequently viewed a police lineup of six persons and immediately recognized the appellant as being the party who had come into the store on September 24, 1980 and robbed her. She made an in-court identification of the appellant based upon her viewing him at the time of the robbery. She described the appellant as having bloodshot, red eyes and a heavy beard. She gave this description to Officers Sanders and Parks, as well as Officer Walden.
The appellant was subsequently arrested on September 27, and taken to the Marshall County Sheriff’s Department, where he was interrogated. Officer Walden indicated that he gave the appellant a complete Miranda warning both at the time of his initial arrest and subsequently at the Marshall County Sheriff’s office, and that the appellant signed a waiver of his constitutional rights.
Officer Walden explained at trial that he had telephoned the appellant’s cousin, one Keith Staton, concerning the appellant’s whereabouts on the day in question and advised the appellant that he got a different or conflicting story concerning the appellant’s whereabouts.
*592 Appellant, through David Henson and also Bill Henson, presented testimony that the appellant was at his grandfather’s home sleeping and had not been to the convenience store in question.
The appellant’s relatives did admit that the appellant owned a dark green Buick with a light green top.
■Mrs. Collier was recalled and identified a photograph and stated that the automobile in question appeared to be the one that the appellant was driving on the day in question.
I
The sole issue on appeal concerns the admission into evidence, over objection, of certain testimony with reference the telephone conversation which Officer Walden had with Keith Staton concerning the whereabouts of the appellant on the date in question. The appellant asserts as error the following, which occurred during Keith Sta-ton’s testimony on direct examination: (R. 159-163).
“Q Do you know the man seated at the end of the table down there?
“A Yes, sir.
“Q And who is that?
“A It is Ronnie Henson.
“Q How long have you known him? “A About twenty years.
“Q Is he related to you in some way?
“A Yes, sir.
“Q What is the relationship?
“A Cousins.
“Q First cousins?
“A Second.
“Q How old are you?
“A Twenty.
“Q How old is the Defendant?
“A Twenty.
“Q Do you recall receiving a telephone call from Officer Larry Walden, the man that just walked out of the courtroom here back in the latter part of September concerning — him questioning you about Ronnie?
“A Yes, sir.
“Q All right. Do you recall what questions — what he asked you?
“MR. BAKER: I object to any questions that he may have been asked. The conversation did not take place in the presence of the Defendant.
“MR. WALDROP: The conversation, Your Honor, took place—
“THE COURT: Overruled.
“MR. WALDROP: You can answer. “A He asked me if Ronnie spent the night with me a few nights before.
“MR. BAKER: I—
“Q What did you tell him?
“MR. BAKER: I object to the — certainly the Defendant has no way to cross examine this witness.
“MR. WALDROP: It is not hear — excuse me, Go ahead, Mr. Baker.
“THE COURT: Finish your objection, Mr. Baker.
“MR. BAKER: The Defendant has no way of cross examining this witness about what was said. He did not hear it. He simply was at one — present when Larry Walden made some telephone calls to somebody, but there is no evidence that this Defendant could possibly be aware of what he may or may not have said to Larry Walden.
“MR. WALDROP: May I respond, please, Your Honor?
“THE COURT: There is no need. Overruled.
“MR. WALDROP: Sir?
“THE COURT: Overruled.
“Q (By Mr. Waldrop) All right. What did you tell him?
“A I told him that he had come up there and woke me up, and I went back to sleep before he left. I don’t know whether he spent the night or not.
“Q Do you recall him asking you about what time that he may have gotten there?
“MR. BAKER: I object — I object to leading the witness.
“THE COURT: Sustained. Don’t lead, please.
“MR. WALDROP: All right. May he answer the question, sir?
*593 “MR. BAKER: I—
“THE COURT: Rephrase it.
“MR. WALDROP: All right, Let me rephrase it. Let me rephrase my question.
“Q (By Mr. Waldrop) Was there any other conversation by Officer Walden other than did he spend the night there?
“A I don’t remember really.
“Q All right. Did in fact you see the Defendant a couple of nights earlier from the time that Officer Walden called you?
“A Yes, I saw him.
“Q All right. Where did you see him?
“A At my home.
“Q Do you have a judgment as to the approximate time of the day or evening that you saw the Defendant?
“MR. BAKER: I object to this line of questioning. I don’t see that it is related at all to the charges against the Defendant. I don’t even know what day.
“THE COURT: Well, you did not base your objection on that, but now that you have, sustained. It has not been designated what day, only the time.
“MR. WALDROP: All right, sir.
“Q (By Mr. Waldrop) Do you recall on the Wednesday before you received the telephone call from Officer Larry Walden — on the Wednesday before whether you saw the Defendant at any time of the day or the evening?
“A Yes, sir, I saw him.
“Q All right. Now, approximately what time of the day or evening would that have been?
“A Around midnight.
“Q All right. And was that at your house?
“A Yes, sir.
“Q Were you up at the time the Defendant arrived?
“A No, sir.
“Q I am sorry, I can’t hear you.
“A No, sir.
“Q Where were you at the time the Defendant arrived?
“A I was in bed.
“Q Was anyone else at the house?
“A Yes, sir.
“Q Who else was at the house?
“A My roommate.
“Q Who?
“A My roommate.
“Q Who is that?
“A Pat Patterson.
“Q Were you good friends — or friends with the Defendant?
“A Yes, sir.
“Q During the last several years?
“A Yes, sir.
“Q Do you know whether the Defendant within six months of this occasion that you have testified to — have you ever seen him driving a car?
“A Yes, sir.
“Q What kind of car?
“A It is a Buick.
“Q What color?
“A Green I believe.
“Q Now, do you know whether he was in the green Buick that evening that you have just testified about — on the Wednesday before?
“A No, sir, I don’t.
“Q You didn’t see the car?
“A No, I didn’t look at it.
“Q When he arrived, what did you do? “A I just opened the door and let him in. I was in bed.
“Q Did you go back to bed?
“A Yes, sir.”
In reviewing the record of this trial, we find that Officer Walden was allowed, without objection, to state the essence of his conversation with Keith Staton and this testimony was admitted without objection. R. 106-107, reading as follows:
“Q All right. After you asked him that, then what did you ask him?
“A I asked him had Ronnie spent the night down there on Wednesday night.
“Q All right. And after you asked him that, was there any more conversation?
“A I asked him what time he got down there.
“Q All right. And after you asked him that, do you recall any other conversation?
*594 “A I asked him what time he left.
“Q Now, after that, was there any other conversation that you had?
“A I believe I asked him if there was anyone with him.
“Q With who?
“A With Ronnie when he came.
“Q And after you asked him that, then what?
“A I hung up.
“Q Okay. Now, did you have any further conversation with the Defendant at that time?
“A Yes, sir, I did.
“Q What did you say to him and what did he say to you?
“A I told him — I told Ronnie that apparently he or his cousin one was lying to me, and, he said that—
“Q Who is he?
“A Ronnie. He said that at that point he guessed he had better talk to his lawyer before he answered any more of my questions.
“Q Did he tell you he wanted a lawyer?
“A No, sir.
“Q Did you stop asking him questions at that point?
“A Yes, sir, at that point I did.”
It is clear that the essence of this testimony having been admitted at trial without objection through Officer Walden, the trial court may not be put in error for allowing Staton’s version of this telephone call to be admitted in evidence over appellant’s objection. Johnson v. State, 378 So.2d 1164 (Ala. Cr.App.) cert. quashed, Ala., 378 So.2d 1173 (1979).
No doubt such conversation between Officer Walden and Staton was inadmissible hearsay, but since such had already been admitted into evidence without objection, the trial court may not now be put in error for its ruling in admitting the testimony during the direct examination of Keith Sta-ton by the district attorney. Johnson, supra, and cases cited therein.
We have carefully examined this record and find no error therein. The judgment of conviction is hereby affirmed.
AFFIRMED.
All the Judges concur.