The appellant, Charles Herndon Freeman II, was indicted by the Madison County grand jury for murdering his father in violation of § 13A-6-2, Code of Alabama 1975. The appellant was found guilty as charged and was sentenced to life imprisonment.
The state's evidence at trial tended to show that on the afternoon of August 15, 1989, the victim, 63-year-old Charles Herndon Freeman was killed as a result of a gunshot wound to the back of his head with a .25 caliber pistol.
At trial, Johnny Black, a friend of the appellant, testified that the appellant had telephoned him one afternoon during the latter part of August 1989. Black testified that the appellant told him during the telephone conversation that the victim had been "beating up on him, locking him out of the house, and would not let him use the phone." Black testified that the appellant said that "he couldn't take it any more and he was going to kill [the victim]." Further, Black stated that the appellant called him back that same night and "said he did it," i.e., that he had killed the victim. Black further testified that several days later, the appellant picked him up to go for a ride. The appellant was driving his father's truck at that time. During the course of this drive, the two men drove over a bridge crossing a river. Black testified that the appellant threw a small caliber pistol into the river at that time.
The body of the victim was found in his home by his ex-wife some six days after he had been killed. After attempting to contact the victim for a number of days, Ms. Lois Freeman, the victim's ex-wife and the appellant's mother drove, together with a number of other persons, to the victim's home to check on him. Upon entering his home, they found his body.
The victim's four-wheel drive truck, his wallet, and his checkbook were missing from his home. Authorities were contacted, and among those responding to the call was Investigator Bud Parker of the Huntsville Police Department.
Parker testified that on the day the body was found, he issued an all points bulletin describing the victim's truck. Later that same day, Parker was notified that the truck had been found and that the appellant had been transported to the Huntsville Police Department. Parker then proceeded to the police department, where, after advising the appellant of hisMiranda rights, the police questioned him concerning the victim's death. During that interview, the appellant confessed to Parker that he had killed his father.
Freeman presents several issues for our consideration.
 I
The appellant contends that the trial court erred by not requiring the prosecutor to state clear, valid, and reasonably specific race-neutral reasons for striking five out of seven blacks from the venire panel.
Initially, we observe that the appellant in this case is a white male. At the end of the jury selection process, counsel for the defense made an objection pursuant to Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In that case *Page 1015 
the United States Supreme Court held that the equal protection clause of the United States Constitution prohibits prosecutors from striking potential jurors from the venire solely because of their race or "on the assumption that black jurors as a group will be unable to impartially consider the state's case against a black defendant." The United States Supreme Court further held that "once the defendant makes a prima facie showing [that the state has struck a number of black veniremen], the burden shifts to the state to come forward with a neutral explanation for challenging black jurors." From the time of the Batson decision until recently, our Court and the Alabama Supreme Court had consistently held that the decision in Batson applied only in those cases where the defendant was a member of "a cognizable racial group," and did not apply where the defendant was white.
Recently, the United States Supreme Court held inPowers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411
(1991), that a white defendant may complain that blacks have been struck from the jury because of race.
In this case, defense counsel made a Batson objection; however, the trial judge held that the appellant could not make a prima facie showing of discrimination because he was not a member of a racially cognizable group. (This holding was correct at the time of the learned trial judge's decision.) However, in light of the United States Supreme Court's decision in Powers, supra, we must comply with the holding and remand this case to the Circuit Court for Madison County with instructions to hold a Batson hearing and, if the appellant makes a prima facie showing, the prosecutor must be required to state race-neutral reasons for the complained of challenges.
In the interest of judicial economy, we will address the appellant's other issues on appeal to this court.
 II
The appellant next contends that his case must be reversed because his warrantless arrest was illegal. He argues that there was no probable cause for the arrest.
Although we reject the appellant's contention that his arrest was illegal, the ultimate outcome of this case would not change if we were to accept this argument. UnderYancey v. State, 48 Ala. App. 476, 478, 265 So.2d 918
(Ala.Cr.App. 1972), "an unlawful arrest is not [a] bar to a prosecution of a subsequent indictment for the same charge." See also Coral v. State, 551 So.2d 1181, 1182
(Ala.Cr.App. 1989); Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225,30 L.Ed. 421 (1886). In this case, an indictment was returned against the appellant in October of 1989 charging him with murder. This indictment, subsequent to his arrest, cured any alleged arrest irregularities.
The appellant next contends that the trial court erred when it failed to suppress statements made by the appellant after his warrantless arrest.
This argument is based upon the premise that no probable cause for arrest existed when the appellant was taken to the Huntsville Police Department for questioning. We believe, however, that sufficient probable cause existed at that time. Investigator Parker, an 18-year veteran of the Huntsville Police Department testified that the following facts were known at the time the appellant was transported to the police station: 1) The body of the victim was found in his home on August 31, 1989; 2) it was apparent upon opening the door that he had been dead for a number of days; 3) the victim had in fact been dead for six days; 4) the appellant had been residing at the victim's house up until the time of the victim's death; 5) the appellant had not reported the victim's death; 6) the victim had a gunshot wound to the back of his head; 7) the victim's truck was missing from his residence at the time of the investigation; 8) the appellant had been seen driving the victim's truck after the victim had been killed; and 9) the victim's wallet and checkbook were missing from his house. After the all points bulletin was issued, but before the appellant was located, Parker learned that checks belonging to *Page 1016 
the victim had been written after the victim was killed.
All of these facts were known to Investigator Parker at approximately 1:45 p.m. on August 31, 1989, the date and time at which the appellant was located. Although Parker did not himself locate and transport the appellant to the police department, the facts known to one officer are imputed to other officers working under the same authority. SeeBrinks v. State, 500 So.2d 1311 (Ala.Cr.App. 1986).
In Sexton v. State, 349 So.2d 126 (Ala.Cr.App. 1977), Judge Bowen, writing for this court, held:
 "Whether a warrantless arrest is constitutionally valid depends upon 'whether, at the moment the arrest was made, the officers had probable cause to make it.' Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142
(1964).
". . . .
 "Officers are said to have 'probable cause' to arrest if at the moment of arrest:
 " 'The facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that (the subject of the arrest) had committed or was committing an offense.' Beck, supra, 379 U.S. at 91, 85 S.Ct. at 225. See also Sellers v. State, 48 Ala. App. 178, 186, 263 So.2d 156, 163 (1972)."
In Bush v. State, 523 So.2d 538, 540 (Ala.Cr.App. 1988), we stated that " '[p]robable cause is concerned with "probabilities," that "are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." [citations omitted].' " We held in Cooper v. State, 480 So.2d 8, 11
(Ala.Cr.App. 1985):
 "To make such a determination [as to probable cause] '[t]he facts are judged on the basis of whether a reasonably prudent man of the officer's experience and training, looking at the "totality of the circumstances and the inferences" therefrom, would conclude that there is probable cause to believe that the vehicle or the individual is involved in violating the law.' United States v. Thomas, 536 F. Supp. 736, 743
(M.D.Ala. 1982)."
Further, § 15-10-3(3), Code of Alabama 1975, provides:
 "An officer may arrest any person without a warrant on any day and at any time. . . .
". . . .
 "(4) When a felony has been committed and he has reasonable cause to believe that the person arrested committed it."
Thus, the facts which were within the knowledge of Investigator Parker clearly established probable cause to believe that the appellant was guilty of murder. The appellant confessed after he had been thoroughly advised of his Miranda rights, and in fact, he made a second confession, which was tape-recorded by Parker after he was advised of hisMiranda rights a second time.
For the reasons stated above, the trial court correctly found that probable cause for the arrest existed, correctly denied the appellant's motion to suppress his confession, and correctly allowed the confession to be read to the jury and the tape recording of the confession to be played.
 III
The appellant next contends that the circuit court erred by allowing into evidence past acts of misconduct by the appellant which were not charged in the indictment. Specifically, the appellant argues that the prosecutor should not have been allowed to question him concerning prior violations of certain juvenile probation conditions while the appellant lived with his mother in St. Louis, Missouri.
The complained of questions and testimony were as follows:
 "Q [Prosecutor]: Can you tell the jury why you went to live with your dad?
". . . .
 "A [Appellant]: My mom had come down here to get my sister back, to *Page 1017 
take her back to St. Louis, and when she did that, my dad decided to sell the house out from under us, which he did, and we stayed with one of my mom's friends for about eight months until she could no longer afford to keep us up, and my dad wouldn't take us without signing over parental custody, and when she did that, we came down.
 "Q: So what was the reason you came down, now, out of all of that?
 "A: My dad sold the house out from under us that he had kept when the divorce occurred. We moved back into it after he had left in 1984.
 "Q: So you are saying it was for financial reasons?
"A: We were financially unable to stay together.
"Q: Due to that, your mom —
"A: She signed over parental custody to my dad.
 "Q: Well, isn't it true that the reason you came to live with your dad is because your mom couldn't handle you anymore?
"A: No, that's not true.
 "Q: Isn't it true that you had been on probation and had violated almost every condition of the probation just before this happened?
 "[DEFENSE COUNSEL]: Judge, I object to this line of questions, it clearly goes into an area of uncharged misconduct and no character testimony of my client has been brought out to this point by his direct examination, and there is no relevancy or materiality associated with this line of questioning; if so, it's outweighed by the prejudicial effect that could be created.
 "THE COURT: Ladies and gentlemen, we will take a short recess, I will ask you to retire to the jury room while we take this up outside the presence of the jury.
 "(The following occurred out of the presence and hearing of the jury):
 "THE COURT: [Prosecutor], tell me the basis that you seek to admit the fact that the defendant was on probation and that that was the true cause of the change in custody?
 "[PROSECUTOR]: Judge, it's impeachment. If he testifies under oath to a fact in the case, the State is allowed to cross-examine him on facts that we know show that is not the truth, and it goes to his credibility as a witness, his believability and is solely offered for the purpose of impeachment."
In Pack v. State, 461 So.2d 910, 914 (Ala.Cr.App. 1984), Judge Patterson, writing for this court, stated:
 "As a general proposition of law it has been stated that 'the cross-examining party has the absolute right on cross-examination, not only to inquire as to matters relevant to the issues under the pleading, but also to inquire into the conduct and circumstances of the witness which have measurable bearing upon his credibility.' C. Gamble, McElroy's Alabama Evidence, § 136.01 (3d ed. 1977)."
The appellant in this case had testified that the reason for his relocation from his mother's custody in St. Louis to his father's in Huntsville was because his father "sold the house out from under us." The appellant further testified that he and his mother were financially unable to stay together.
Under the authority of Pack, the prosecutor is entitled to elicit evidence which tends to demonstrate the defendant's lack of credibility. We held in Fisher v. State, 57 Ala. App. 310,328 So.2d 311, 317 (Ala.Cr.App.), cert. denied, 295 Ala. 401,328 So.2d 321 (1976):
 " '[W]hen the accused takes the stand to testify in his own behalf, he does so in a dual capacity — (1) as the accused and (2) as a witness. In his capacity as a witness his credibility may be impeached in the same way or ways in which the credibility of any other witness may be impeached. Stone v. State, 208 Ala. 50, 93 So. 706; Pitts v. State, 261 Ala. 314, 74 So.2d 232. "A defendant, who testifies for himself as a witness, may be impeached in the same manner as other witnesses, by showing that he has been *Page 1018 
convicted of a crime involving moral turpitude, or that he has made contradictory statements, or that he is a person of bad character." Carpenter v. State, 193 Ala. 51, 69 So. 531, 532; Gast v. State, 232 Ala. 307, 167 So. 554; Vaughn v. State, 235 Ala. 80, 177 So. 553.' "
The appellant's mother later testified that she was unable to cope with the appellant's behavior problems and that the appellant had, in fact, broken the terms of his probation. This testimony was given without objection. We held inThompson v. State, 527 So.2d 777, 780 (Ala.Cr.App. 1988):
 "Testimony which may be apparently illegal upon admission may be rendered prejudicially innocuous by subsequent or prior lawful testimony to the same effect or from which the same facts can be inferred. Bell v. State, 466 So.2d 167, 174
(Ala.Cr.App. 1985); Ware v. State, 409 So.2d 886, 893 (Ala.Cr.App. 1981); Henson v. State, 407 So.2d 590, 594 (Ala.Cr.App. 1981)."
Thus, the appellant could not prevail on this issue even if the prosecutor's question had been improper. The mother's testimony as to the appellant's probation violations, without objection, rendered the previously elicited testimony of the appellant harmless.
 IV
The appellant next contends that the trial court erred by allowing the introduction of evidence that the appellant had taken the victim's wallet, checkbook, and truck.
The appellant's defense at trial was that of self-defense. He testified that during a struggle with his father, the pistol accidentally fired, killing him.
Because intent must be proven in order to secure a conviction for murder, the appellant's intent to kill the victim was a critical issue at trial.
In Seagle v. State, 448 So.2d 481, 484 (Ala.Cr.App. 1984), this court held:
 "As an exception to the general rule, the law permits the proof of criminal acts of the defendant to show criminal intent.
 In Hayes v. State, 384 So.2d 623 (Ala.Cr.App. 1979), writ quashed, 384 So.2d 627 (Ala. 1980), the court stated at page 626:
 " 'If the accused is charged with a crime that requires a prerequisite intent, then prior or subsequent criminal acts are admissible to show that he had the necessary intent when he committed the now charged crime. McElroy's Alabama Evidence, §§ 69.01(5), 70.01(2). See Fikes v. State, 263 Ala. 89, 81 So.2d 303; McKenzie v. State, 250 Ala. 178, 33 So.2d 488; Hogue v. State, 54 Ala. App. 682, 312 So.2d 86 . . .' (Emphasis supplied.)"
Thus, the trial court correctly allowed the complained of evidence to be received.
As stated in part I above, this case is remanded to the circuit court for a Batson hearing. The transcript of the hearing along with the court's findings, should be filed with this court within 90 days from the date of this opinion.
REMANDED WITH DIRECTIONS.
All the Judges concur.